# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DEBRA RENA GRACIANI,

        Plaintiff,

    v.

PROVIDENCE HEALTH &
SERVICES – WASHINGTON, et al.,

        Defendants.

Case No. 3:18-cv-00087-SLG

## ORDER RE MOTION TO DISMISS CLAIM V

Before the Court at Docket 42 is Defendants Providence Health & Services – Washington ("Providence"),[1] Kelli Rinas, James Efird, Brenda Franz, and James Blankenship's ("Defendants") motion to dismiss Claim V of Plaintiff Debra Rena Graciani's Complaint. Ms. Graciani opposed at Docket 46. Defendants replied at Docket 47. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

Ms. Graciani alleges as follows in her Complaint. She "is a registered nurse with specialized training in dialysis." Her race is African American.[2] On or about

---

[1] Defendants note that "Providence Health & Services – Washington does business as Providence Health & Services – Alaska and Providence Anchorage Medical Center. Both have been misnamed in this litigation as Providence Health & Services." Docket 42 at 2 n.3.

[2] Docket 1 at 2, ¶ 4.

February 17, 2014, Providence hired Ms. Graciani for a part-time position in its dialysis department.[3]  On or about April 16, 2015, Ms. Graciani was hired into a full-time nurse position in the dialysis department; she alleges she received the position only after her union "stepped in on her behalf" to prevent Providence from hiring another person.[4]

Ms. Graciani's Complaint alleges that, initially, nurses' shifts were scheduled in a fair manner.[5]  Shortly after Ms. Graciani was hired, Mr. Efird, a fellow nurse, made a derogatory remark to several nurses about African Americans.[6]  In late 2014 or early 2015, Mr. Efird was promoted; in his new position, he had authority to resolve nurses' scheduling conflicts.[7]  Ms. Graciani alleges that throughout 2015, Mr. Efird favored Caucasian nurses, to the detriment of Ms. Graciani, in scheduling shifts.[8]  Ms. Graciani also makes two allegations regarding 2016 scheduling.  She asserts that "[s]he was sent home multiple times based on 'Overstaff' in 2016 without any regard to the rotation required by the Collective

---

[3] Docket 1 at 2, ¶ 9.

[4] Docket 1 at 3, ¶ 13.

[5] Docket 1 at 2, ¶ 10.

[6] Docket 1 at 2, ¶ 11.

[7] Docket 1 at 3, ¶ 12.

[8] Docket 1 at 3–5, 7–8, ¶¶ 12, 15, 17, 21, 35, 37–39.  Ms. Graciani alleges that in June 2015, Mr. Efird also ordered Ms. Graciani to dialyze a young patient, despite Ms. Graciani's inexperience with performing dialysis on children, after the other nurses refused to dialyze the patient.  Docket 1 at 3, ¶ 14.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 2 of 21

Bargaining Agreement."[9] Ms. Graciani's Complaint does not identify the person(s) involved in the decision to send her home. She also alleges that beginning in August 2016, unspecified "Providence managers began allowing Caucasian employee Kelly Whitworth, a Patient Care Technician, to set the scheduling for the dialysis department employees."[10] Ms. Whitworth is not a named defendant in this action.

The Complaint also alleges that between June 2015 and October 2016, Ms. Graciani attended disciplinary meetings and other actions with certain of the named defendants on multiple occasions. She maintains she was criticized for her demeanor[11] and was wrongly accused of failing to follow procedures.[12]

"On or about June 20, 2016 Ms. Graciani filed a complaint for race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC")."[13] "On or about September 27, 2016, Ms. Graciani's EEOC complaint was transferred to the Alaska State Commission for Human Rights ("ASCHR") for investigation."[14] Also in September 2016, Ms. Graciani submitted to Providence

---

[9] Docket 1 at 10, ¶ 56.

[10] Docket 1 at 11, ¶ 57.

[11] *See, e.g.*, Docket 1 at 4, ¶ 17.

[12] *See, e.g.*, Docket 1 at 11, ¶ 62.

[13] Docket 1 at 10, ¶ 54.

[14] Docket 1 at 11, ¶ 61.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 3 of 21

"an integrity report about the race discrimination and retaliation that she was facing."[15]

The Complaint alleges that "[o]n or about November 1, 2016 Ms. Graciani was terminated for allegedly failing to follow proper [patient] handoff protocols . . . ."[16] Ms. Graciani successfully challenged her termination and was granted reinstatement.[17] However, her Complaint alleges that "Providence continued to resist reemploying Ms. Graciani. They would not reinstate her to the dialysis unit. Ms. Graciani is currently in the ICU unit. Providence did not restore her benefits and are treating her as a new hire on a 90 day probationary period."[18]

On March 23, 2018, Ms. Graciani filed her Complaint in this Court.[19] She alleges six claims. Providence is the only named defendant in Claims I–IV. Claims I–III allege violations of Title VII of the Civil Rights Act of 1964;[20] Claim IV alleges

---

[15] Docket 1 at 11, ¶¶ 59–60.

[16] Docket 1 at 12, ¶ 63.

[17] Docket 1 at 12, ¶ 64.

[18] Docket 1 at 12, ¶ 65.

[19] Docket 1.

[20] Claim I alleges "disparate treatment in hiring and promotion, compensation and terms, conditions and privileges of employment." Docket 1 at 12, ¶¶ 69–70 (emphasis omitted); 42 U.S.C. § 2000e-2(a)(1). Claim II alleges "disparate treatment in segregation." Docket 1 at 13, ¶¶ 71–72 (emphasis omitted); 42 U.S.C. § 2000e-2(a)(2). Claim III alleges retaliation. Docket 1 at 13, ¶¶ 73–74; 42 U.S.C. § 2000e-3(a).

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 4 of 21

a deprivation of equal rights under Section 1981.[21]  Claim V alleges a conspiracy by the four individual Defendants to interfere with Ms. Graciani's civil rights in violation of Section 1985(3).[22]  Claim VI seeks punitive damages from all Defendants.[23]

In support of Claim V, Ms. Graciani maintains that Ms. Rinas, Mr. Efird, Ms. Franz, and Mr. Blankenship, acting individually and as agents of Providence, "engag[ed] in an ongoing campaign of destructive behavior to Ms. Graciani's career by issuing a string of vague, unsupported, false and misleading disciplinary actions against Ms. Graciani" to which nurses of other races were not subjected;[24] "arrang[ed] scheduling practices to favor Caucasian employees in the dialysis unit to the detriment of [Ms. Graciani,] the African American employee;"[25] "creat[ed] circumstances under which Providence, through its employees, justified terminating Ms. Graciani's employment employee [sic] for an alleged policy violation that the other nurses of all other represented races use as common practice and were not terminated" for;[26] and "hinder[ed] and prevent[ed] African

---

[21] Docket 1 at 13–14, ¶¶ 75–76; 42 U.S.C. § 1981.

[22] Docket 1 at 14–15, ¶¶ 77–80; 42 U.S.C. § 1985(3).  It is unclear whether Ms. Graciani also intended to include Providence in this claim.

[23] Docket 1 at 15, ¶¶ 81–82.

[24] Docket 1 at 14, ¶ 78a.

[25] Docket 1 at 14, ¶ 78b.

[26] Docket 1 at 14–15, ¶ 78c.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 5 of 21

American employees from working in Providence's dialysis department."[27]  Ms. Graciani alleges that the individual Defendants "each engaged in one or more acts personally in furtherance of the conspiracy that were motivated by animus toward Ms. Graciani as an African American citizen and as a person engaged in protected activity," and that Ms. Graciani "was injured in her property interest in her career with Providence and deprived of rights and privileges of equal employment[.]"[28]

On October 9, 2018, Defendants filed the instant motion to dismiss Claim V.[29]

## LEGAL STANDARDS

### I. Motions to Dismiss

Defendants move to dismiss Claim V of Ms. Graciani's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Supreme Court's interpretation

---

[27] Docket 1 at 15, ¶ 78d.

[28] Docket 1 at 15, ¶¶ 79–80.

[29] Docket 42.  On April 4, 2018, the Court issued an order requiring that parties include with any motion to dismiss "a notice of certification of conferral indicating that the parties have conferred to determine whether an amendment could cure a deficient pleading, and have been unable to agree that the pleading is curable by a permissible amendment."  Docket 3 (Order re Motion to Dismiss).  Defendants include a certification of conferral with the instant motion.  Docket 42 at 7–8.  Ms. Graciani maintains that "[n]o [t]rue [c]onferral [t]ook [p]lace" because Defendants' attempt to confer "only mentioned the statute of limitations defense and contained the wrong time limitations period."  Docket 46 at 13–15.  The Court finds that Defendants satisfied the Court's April 4, 2018 order when they "attempted to narrow the issues raised in this motion prior to filing this motion by emailing Plaintiff's Counsel and providing legal citations for the Defendants' position concerning the statute of limitations."  Docket 42 at 7; *see also* Docket 47 at 7–8.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 6 of 21

of that rule in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal.*[30] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] This inquiry requires a court to "draw on its judicial experience and common sense."[32] When reviewing a Rule 12(b)(6) motion, a court considers only the complaint and other pleadings, documents incorporated into the pleadings by reference, and matters on which a court may take judicial notice.[33]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave [to amend the complaint] when justice so requires."[34]

## II. Section 1985

The United States Supreme Court has held that "Section 1985(3) may not be invoked to redress violations of Title VII."[35] The statute was enacted with a narrow purpose:

---

[30] Docket 42 at 3–4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[31] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570 (2007)).

[32] *Iqbal*, 556 U.S. at 679.

[33] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[34] Fed. R. Civ. P. 15(a)(2).

[35] *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) ("If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of the[] detailed and specific provisions of [Title VII]. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 7 of 21

The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate [African Americans] and give them equal access to political power. The predominate purpose of § 1985(3) was to combat the prevalent animus against [African Americans] and their supporters.[36]

To maintain a Section 1985 claim, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[37] In addition to satisfying these four elements, a plaintiff must also demonstrate that the violation of her civil rights was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[38] "A claim under [§ 1985] must allege facts to support the allegation that defendants

---

Title VII would be grossly altered. Perhaps most importantly, the complaint could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Id.* at 375-376) (footnote omitted).

[36] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836–37 (1983).

[37] *United Bhd.,* 463 U.S. at 828–29 (citing 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971)).

[38] *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 8 of 21

conspired together. A mere allegation of conspiracy without factual specificity is insufficient."[39]

### III. The Statute of Limitations and Tolling Standard

For federal laws that were enacted prior to December 1, 1990 and that lack a limitations period, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. In 42 U.S.C. § 1988, Congress has implicitly endorsed this approach with respect to claims enforceable under the Reconstruction Civil Rights Acts."[40] Therefore, the Court will look to the statutes of limitations in Alaska regarding Claim V.[41]

---

[39] *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (reversing district court's dismissal with prejudice of § 1985 claim for prior unlawful arrest, strip search, and prosecution because although "amended complaint contain[ed] legal conclusions but no specification of any facts to support the claim of conspiracy," district court "should have advised" defendant of deficiency in pleading).

[40] *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985) (footnote omitted) (holding that Section 1983 claim was properly subject to state statute of limitations for personal injury actions); *see also* 42 U.S.C. § 1988(a) ("The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.").

[41] Although the statute of limitations is an affirmative defense, its applicability may be considered in ruling on a motion to dismiss. In *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013), the Ninth Circuit held:

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 9 of 21

"[W]hen a federal statute is deemed to borrow a State's limitations period, the State's tolling rules are ordinarily borrowed as well . . . ."[42] Alaska has "adopted a three-part test for equitable tolling: (1) the alternative remedy must give notice to the defendant; (2) there must not be prejudice to the defendant; and (3) the plaintiff must have acted reasonably and in good faith."[43] "[T]he statute of limitations is tolled only for those who initially pursue their rights in a judicial or quasi-judicial governmental forum."[44]

---

The farmworkers are correct to note that plaintiffs ordinarily need not "plead on the subject of an anticipated affirmative defense." *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss. *See Cedars–Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128–29 (9th Cir.1999) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1357 (3d ed. 1998) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)....")). In this case, the statute of limitations issues are apparent on the face of the complaint. The district court, therefore, was correct to address them.

[42] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 116 (2013); *see also Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 464 (1975) ("In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.").

[43] *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884 (Alaska 2006) (citing *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987)).

[44] *Gudenau*, 736 P.2d at 768.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 10 of 21

## DISCUSSION

## I. The Applicable Statute of Limitations; Tolling

Defendants maintain that the applicable statute of limitations for Claim V is

AS 9.10.070(a), which provides as follows:

> Except as otherwise provided by law, a person may not bring an action
> . . . (2) for personal injury or death, or injury to the rights of another
> not arising on contract and not specifically provided otherwise; . . . (5)
> upon a liability created by statute, other than a penalty or forfeiture;
> unless the action is commenced within two years of the accrual of the
> cause of action.[45]

Ms. Graciani responds that Claim V lies in contract, which is subject to Alaska's

three-year statute of limitations.[46]   Ms. Graciani cites to AS 9.10.070(a)(2)'s

exclusion of actions arising under contract.[47]   Defendants contend in their reply

---

[45] Docket 42 at 4–5 (citing AS 9.10.070(a)(2), which provides that "[e]xcept as otherwise provided by law, a person may not bring an action . . . for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise").

[46] Docket 46 at 5 (citing *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60 (1975) ("[Section] 1981 . . . on its face relates primarily to racial discrimination in the making and enforcement of contracts.  Although this Court has not specifically so held, it is well settled among the federal Courts of Appeals—and we now join them—that [§] 1981 affords a federal remedy against discrimination in private employment on the basis of race.") (footnote omitted); *see also* AS 9.10.053 ("Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as provided in AS 09.10.040, or as otherwise provided by law, or, except if the provisions of this section are waived by contract.").

[47] Docket 46 at 5.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 11 of 21

that AS 9.10.070(a)(2) does apply to Ms. Graciani's claim because it lies in tort, rather than contract.[48]

The Court need not reach the issue of the applicability of AS 9.10.070(a)(2) to Claim V. AS 9.10.070(a)(5) provides a two-year statute of limitations for actions based "upon a liability created by statute, other than a penalty or forfeiture[.]" Ms. Graciani brings Claim V under a statute: Section 1985(3). Therefore, a two-year statute of limitations applies to that claim. Ms. Graciani filed her Complaint on March 23, 2018. Unless the statute of limitations is tolled, she cannot maintain a claim for alleged violations of Section 1985(3) that occurred prior to March 23, 2016 unless those alleged violations are part of an actionable continuing violation that did not cease prior to that date.[49]

Ms. Graciani maintains that the statute of limitations is equitably tolled under *Gudenau & Co. v. Sweeney Insurance, Inc.* because on June 20, 2016, she initiated an administrative remedy with the EEOC that was later transferred to the

---

[48] Docket 47 at 4 (citing *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. at 458 n.2.

[49] Ms. Graciani maintains that "[a]t the time Mr. Efird, Ms. Rinas and Ms. Franz began the campaign to develop a foundation for the termination, they did not inform Ms. Graciani that the end result of their actions would be to terminate her employment." Docket 46 at 5 (citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002)). *RK Ventures* held that, in the Section 1983 context, the statute of limitations "begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *RK Ventures*, 307 F.3d at 1058. It is unclear from the face of the Complaint when, or even if, Ms. Graciani is alleging that the named Defendants conspired to cause her employment to be terminated.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 12 of 21

Alaska State Commission for Human Rights.[50]  Ms. Graciani's Complaint filed in

this Court does not specify when these administrative proceedings ceased.

The first prong of *Gudenau*'s equitable tolling test requires that a plaintiff's

"alternative remedy [] give notice to the defendant."[51]  Ms. Graciani's Complaint

fails to establish that she filed her EEOC complaint against any individual

Defendant,[52] and so the Complaint does not adequately allege that any individual

Defendant had notice that Ms. Graciani was asserting a claim against that

Defendant when she initiated the EEOC proceedings.  Therefore, Ms. Graciani has

not plausibly alleged facts that would permit the statute of limitations to be tolled

as to any individual Defendant.

As to Ms. Rinas and Mr. Efird, the Complaint does not contain any

allegations that either of these Defendants engaged in any wrongdoing at any time

---

[50] Docket 1 at 10, ¶¶ 54, 61; *see also* Docket 46 at 7 (citing *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987)).

[51] *Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884 (Alaska 2006) (citing *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987)).

[52] *See generally* Docket 1.  The Court takes judicial notice of the fact that the applicable statute does not allow for the filing of an EEOC complaint against an individual employee.  *See* 42 U.S.C. § 2000e-5(b) (referring to an aggrieved person's filing a charge with the EEOC "alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice"); *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (quoting Fed. R. Evid. 201(b)) ("[T]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 13 of 21

after early December 2015.[53]   Therefore, Defendants' motion to dismiss Ms. Graciani's Claim V will be granted as to Ms. Rinas and Mr. Efird on this basis, without prejudice and with leave to amend.

Ms. Franz and Mr. Blankenship are alleged to have conspired against Ms. Graciani through September 1, 2016.  Their alleged actions from March 23, 2016 forward fall within the applicable two-year limitations period.

## II. The Sufficiency of Ms. Graciani's Allegations in Claim V Against Ms. Franz, Mr. Blankenship, and Providence

Defendants assert that Ms. Graciani has failed to adequately allege each if the following two elements of a Section 1985 claim:  a conspiracy and an act in furtherance of the conspiracy.[54]

Ms. Graciani responds that, as to the presence of a conspiracy, "[t]he complaint contains multiple references to each of the co-conspirators actions and their concerted activity that are known so far," but that "discovery will be needed to elucidate the actions that Ms. Graciani was not privy to[.]"[55]   She further maintains that she "does not need to prove [that the alleged co-conspirators] all acted together at the same time.  She only has to show 'two or more' acted, and

---

[53] Docket 1 at 8, ¶¶ 38–39.

[54] Docket 42 at 6–7 (citing Docket 1 at 2–12, ¶¶ 11–28, 33, 36–37, 43, 51–52, 57, 62–63).

[55] Docket 46 at 12 (citing Docket 1 at 4–11, 14–15, ¶¶ 17–21, 29, 31–32, 35, 38–41, 46–47, 49–50, 55–58, 78–80).

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 14 of 21

that 'one or more persons engaged therein do or cause to be done, any act in furtherance of the conspiracy, whereby another is injured . . . .'"[56]  Ms. Graciani asserts that, as to acts taken in furtherance of the conspiracy, "[t]here are specific facts pled for every single one of the[] areas of injury she suffered that implicate two or more [co-conspirators] acting together."[57]  As to the injury Ms. Graciani suffered, she maintains that "each of the preliminary disciplinary actions [preceding her termination] was not actionable in and of itself.  Each served a purpose to chip away at Ms. Graciani's employment record."[58]

*a.  Ms. Franz and Mr. Blankenship*

The Complaint alleges the following incidents within the limitations period involving Ms. Franz:

- On or about April 1, 2016, Ms. Graciani received her performance appraisal, which Ms. Franz had created.  The appraisal noted "no problems" with Ms. Graciani's work, "[b]ut it was highly critical of [Ms. Graciani's] communication and referenced the disciplinary actions taken [against Ms. Graciani] with respect to communication."[59]

- On or about May 2, 2016, Ms. Franz was at a meeting at which Ms. Graciani "was questioned about an interaction with a nurse during a dialysis taking place in the ICU" and at which "Mr. Blankenship and Ms. Graciani discussed

---

[56] Docket 46 at 13 (citing 42 U.S.C. § 1985(3)).

[57] Docket 46 at 13 (citing Docket 1 at 4–11, 14–15, ¶¶ 17–21, 29, 31–32, 35, 38–41, 46–47, 49–50, 55–58, 78–80).

[58] Docket 46 at 9.

[59] Docket 1 at 9–10, ¶ 48.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 15 of 21

several interactions with nurses and patients, including accusations brought by nurse Mario S[.]"[60]

- In May 2016, Ms. Franz investigated Ms. Graciani's allegation that nurse Mario S. had engaged in unwelcome physical contact with Ms. Graciani. "The investigation culminated in a memo issued to all Providence dialysis employees stating that hugging people without permission is not acceptable workplace behavior. Upon knowledge and belief, Mario S. was not disciplined for his behavior, nor did he ever apologize to Ms. Graciani."[61]

- On or about June 21, 2016, Ms. Franz attended a meeting that was for "the purpose of confronting Ms. Graciani about another interaction with a nurse and patient."[62]

- On or about September 1, 2016, Ms. Franz attended a meeting at which Ms. Graciani was accused of violating a nonexistent Providence policy that prohibited fragranced hand creams.[63]

Claim V includes the following allegations within the limitations period related

to Mr. Blankenship:

- On or about May 2, 2016, Mr. Blankenship, along with Ms. Franz, was at a meeting at which Ms. Graciani "was questioned about an interaction with a nurse during a dialysis taking place in the ICU" and at which "Mr. Blankenship and Ms. Graciani discussed several interactions with nurses and patients, including accusations brought by nurse Mario S[.]"[64]

- "On or about May 4, 2016 Mr. Blankenship issued a disciplinary action against Ms. Graciani for communication issues."[65]

---

[60] Docket 1 at 10, ¶ 49.

[61] Docket 1 at 10, ¶¶ 51–53.

[62] Docket 1 at 10, ¶ 55.

[63] Docket 1 at 11, ¶ 58.

[64] Docket 1 at 10, ¶ 49.

[65] Docket 1 at 10, ¶ 50.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 16 of 21

- On or about June 21, 2016, Mr. Blankenship attended a meeting which had "the purpose of confronting Ms. Graciani about another interaction with a nurse and patient."[66]

- On or about September 1, 2016, Mr. Blankenship attended a meeting at which Ms. Graciani was accused of violating a nonexistent Providence policy regarding fragranced hand creams.[67]

In *Webb v. County of El Dorado*, the Eastern District of California addressed a motion to dismiss that challenged the sufficiency of Section 1985 conspiracy allegations in the employment context. The plaintiff in that case, a woman in her early 50s, alleged that her employer and two of its managers had conspired to violate her civil rights based on her age and gender. She was appointed to the IT Director position in the El Dorado County Information Technology Department, only to be demoted and later denied the position during a competitive application process. After her demotion, the Chief Technology Officer ("CTO") told her he thought she was older than her 51 years, asked her about her retirement plans, and in one instance suggested that she change positions within the County. When the plaintiff complained to another supervisor that the CTO's statements were improperly motivated by the plaintiff's age and gender, the supervisor "brushed aside" the CTO's actions and accused the plaintiff of being "overly sensitive." The supervisor subsequently engaged in multiple meetings regarding hiring an IT Director, and the supervisor changed the requirements for the IT Director position

---

[66] Docket 1 at 10, ¶ 55.

[67] Docket 1 at 11, ¶ 58.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 17 of 21

to include a college degree—which the plaintiff did not have.  Later, the County offered the IT Director job to a man younger than the plaintiff who did not have a college degree.[68]

The district court held that the complaint's allegations "fall short of establishing at this stage any agreement or plan to deprive [the plaintiff] of her rights based on her gender," and that "[n]o connection is pled between the various meetings and the promotion of" the younger man.  "Without more, [the plaintiff] does not plausibly allege the existence of a conspiracy."[69]  Accordingly, the district court dismissed the plaintiff's Section 1985 claim with leave to amend.[70]

The *Webb* court's analysis appears to merge the first two elements of a Section 1985 conspiracy claim.[71]  In *Webb*, the district court concluded that  "[t]o the extent the defendants planned or agreed to do anything during the meetings alleged, it was to change the County IT Department's management structure, as well as to speak generally about [the plaintiff's] position as IT Director."[72]  Similarly,

---

[68] *Webb v. Cty. of El Dorado*, No. 2:15-CV-01189-KJM-EFB, 2015 WL 9480956, at *1–3 (E.D. Cal. Dec. 29, 2015).

[69] *Id.* at *7.

[70] *Id.*

[71] *Id.* at *6  (quoting *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)).  The *Ross* Court's analysis of Section 1985(3) also merged the first two elements of that Section. *Ross*, 140 F.3d at 1284.  The Court considers these first two elements together throughout this order.

[72] *Webb*, 2015 WL 9480956, at *7.

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 18 of 21

Ms. Graciani's allegations against Ms. Franz and Mr. Blankenship in Claim V fail to meet the first two elements of a Section 1985 conspiracy claim. Claim V fails to plausibly allege how these two Defendants planned or agreed to do anything during the meetings to violate Ms. Graciani's civil rights because of her race; rather, the concerns raised during the meetings appear to focus on Ms. Graciani's workplace performance, not her race.[73] In short, Ms. Graciani does not allege facts to support the allegation that Ms. Franz and Mr. Blankenship conspired together to violate Ms. Graciani's civil rights because of Ms. Graciani's race.

Ms. Graciani has also not adequately alleged that any actions taken by Ms. Franz and Mr. Blankenship meet the third element of Section 1985—that they were taken "in furtherance of the [alleged] conspiracy."[74] Rather, each of these Defendant's alleged actions appear to have been taken to support Providence's workplace culture and productivity.

Finally, as to the fourth element of Section 1985, Ms. Graciani alleges that she was "injured in [her] person or property or deprived of any right or privilege of a citizen of the United States" when she was removed from her position.[75] She

---

[73] *See, e.g.*, Docket 1 at 9–10, ¶ 48.

[74] *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983) (citing 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971)).

[75] *United Bhd.*, 463 U.S. at 828–29 (1983) (citing 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. at 102–103.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 19 of 21

concedes in her briefing that "each of the preliminary disciplinary actions [preceding her termination] was not actionable in and of itself. Each served a purpose to chip away at Ms. Graciani's employment record."[76] But Ms. Graciani has not plausibly alleged that either Ms. Franz or Mr. Blankenship was involved in a conspiracy that caused her to be terminated, as the events involving each of these named Defendants are not alleged to have caused the termination.[77]

Ms. Graciani has failed "to 'state a claim to relief that is plausible on its face'" as to either Ms. Franz or Mr. Blankenship.[78] Based on the foregoing, Defendants' motion to dismiss Ms. Graciani's Claim V will be granted as to each of these Defendants, without prejudice and with leave to amend.

### b. Providence

It is not entirely clear whether Plaintiff intended to name Providence as a Defendant in Claim V. Ms. Graciani's only reference to Providence in Claim V is that the individual Defendants acted "as agents under authority provided by defendant Providence[.]"[79] Assuming Ms. Graciani intended to name Providence in this claim, the Court assumes without deciding that the intracorporate conspiracy

---

[76] Docket 46 at 9.

[77] Docket 1 at 11–12, ¶¶ 62–63.

[78] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[79] Docket 1 at 14, ¶ 78.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 20 of 21

doctrine would not bar a Section 1985(3) claim against Providence.[80]  Because

Ms. Graciani has failed to state a claim as to any individual Defendant, any

conspiracy claim that she may have intended to assert against Providence also

fails.  Based on the foregoing, Defendants' motion to dismiss Claim V as to

Providence, without prejudice and with leave to amend.

## CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss Claim V at Docket

42 is GRANTED as to all Defendants, without prejudice and with leave to amend.

Ms. Graciani is accorded **14 days** from the date of this order to file an amended

complaint,[81] or a notice that she intends to proceed solely on Claims I–IV and VI

as to Providence only.  If an amended complaint is filed, Defendants are accorded

**14 days** from the date of its filing to respond.

DATED this 5th day of April, 2019 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[80] *See Mustafa v. Clark County Sch. Dist*, 157 F.3d 1169, 1181 (9th Cir. 1998).  *See also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

[81] Local Civil Rule 15.1(a) (D. Alaska) ("A party moving to amend a pleading must attach the proposed amended pleading as an exhibit to the motion.  The proposed amended pleading must clearly indicate how it differs from the pleading it amends, by bracketing or striking through the text to be deleted and underlining the text to be added.  The proposed amended pleading must not incorporate by reference any prior pleading, including exhibits.").

Case No. 3:18-cv-00087-SLG,  *Graciani v. Providence Health & Services, et al.*
Order re Motion to Dismiss Claim V
Page 21 of 21