# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DEBRA RENA GRACIANI,<br><br>        Plaintiff(s),<br><br>    v.<br><br>PROVIDENCE HEALTH & SERVICES, KELLI RINAS, JAMES EFIRD, BRENDA FRANZ, and JAMES BLANKENSHIP,<br><br>        Defendants. | Case No. 3:18-cv-00087-SLG |

## ORDER RE PENDING MOTIONS

Before the Court at Docket 99 is Plaintiff Debra Rena Graciani's Motion to Permit Second Amendment of Complaint After Expiration of Deadline to Amend. Defendants Providence Health & Services, Kelli Rinas, James Efird, Brenda Franz, and James Blankenship ("Defendants") responded in opposition at Docket 106. Plaintiff replied at Docket 109.

Also before the Court are Plaintiff's Motion for Filing Document Under Seal and Plaintiff's Motion to Challenge Confidentiality and Notice of Filing Document Under Seal at Docket 102 and Docket 100, respectively. Defendants responded in opposition to Plaintiff' Motion to Challenge Confidentiality at Docket 104. Plaintiff replied at Docket 108.

## I. Plaintiff's Motion to Amend/Correct the Complaint

On March 23, 2018, Plaintiff commenced this action against Defendants alleging violations of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3) arising from discrimination during the course of her employment as a registered nurse at Providence Health & Services ("Providence").[1] Plaintiff was terminated on or around November 1, 2016 by letter signed and delivered by Vicky Phillips, the Director of Clinical and Business Operations at Providence, "for allegedly failing to follow proper handoff protocols when transferring [a] patient back to the room."[2] On August 1, 2018, the Court issued its scheduling and planning order, providing that motions to amend the pleadings "shall be served and filed not later than **30 days after deadline for initial disclosures**."[3] It further provided that the deadline for initial disclosures was August 29, 2018; thus, the deadline to amend the pleadings was September 28, 2018.[4] Plaintiff did not move to amend the complaint before that deadline.

---

[1] Docket 1 at 2, ¶ 4; Docket 1 at 12–16, ¶¶ 69–80.

[2] Docket 1 at 12, ¶ 63; Docket 99 at 2; Docket 99-3 at 2, ¶ 9. Following grievance and arbitration, Ms. Graciani was reinstated. Docket 99-3 at ¶ 68.

[3] Docket 25 at 5 (emphasis in original).

[4] Docket 34; Docket 31.

On October 9, 2018, Defendants filed a motion to dismiss Plaintiff's § 1985(3) claim (Claim V), which the Court granted on April 8, 2018, dismissing the claim without prejudice and with leave to amend.[5]

On April 19, 2019, Plaintiff filed a motion to amend the complaint pursuant to Fed. R. Civ. P. 15(a). Plaintiff's motion sought to (1) add numerous additional factual allegations, (2) add individual defendants to the § 1981 claim (Claim IV), and (3) amend one of the Title VII claims (Claim III).[6] Notably, Vicky Phillips was not among the defendants that Plaintiff sought to add. On May 6, 2019, the Court informed Plaintiff at oral argument that the motion to amend was untimely insofar as it sought to amend the § 1981 and Title VII claims, and informed Plaintiff that she would have to move under Rule 16(b) to amend the scheduling order to permit amendment of those claims.[7]

On May 13, 2019, without withdrawing her first motion, Plaintiff filed another motion to amend the complaint, this time under Rule 16(b), proposing the same amendments.[8] On July 22, 2019, the Court denied Plaintiff's first motion to amend (brought under Rule 15(a)) on the basis that it was filed more than six months after the deadline to amend pleadings.[9] But the Court allowed Plaintiff's proposed

---

[5] Docket 42; Docket 54.

[6] Docket 61-1.

[7] Docket 74 (Minute Entry); Docket 90 at 4.

[8] Docket 78.

[9] Docket 90 at 6.

amendments to add factual allegations to the extent they were permitted by the Court's order at Docket 54 relating to Plaintiff's §1985(3) claim.[10] Moreover, under Rule 16(b), the Court allowed the proposed amendments to the Title VII claim and to the § 1981 claim.[11] Plaintiff filed her amended complaint on July 22, 2019.[12]

On November 26, 2019, Plaintiff filed the current motion to amend/correct the amended complaint, seeking to add Vicky Phillips as a defendant.[13] As a result of Plaintiff's motion, the parties filed a joint motion to extend certain deadlines, which the Court granted, including the deadline for discovery motions, now December 30, 2019, and for dispositive motions, now January 31, 2020.[14]

In her motion to amend/correct the complaint, Plaintiff explains that she was previously unaware of the extent of Ms. Phillips' involvement in the events underlying the allegations in the complaint.[15] Although Plaintiff acknowledges that Ms. Phillips "signed and presented [her] termination letter" and "attended two of the union meetings," Plaintiff maintains that she only discovered Ms. Phillips' role in the events at issue in this case through emails produced by Defendants on

---

[10] Docket 90 at 6.

[11] Docket 90 at 7–8.

[12] Docket 91.

[13] Docket 99 at 1.

[14] Docket 101; Docket 103.

[15] Docket 99 at 1–2.

January 31, 2019.[16] Specifically, Plaintiff relies on two email chains, attached as Exhibits 1 and 2 to the motion, to assert that she "now has evidence that Ms. Phillips was taking an active role in the group effort to develop a strategy to get rid of [her]."[17]

Defendants oppose Plaintiff's request, emphasizing that the "only basis for Plaintiff's proposed amendment are a couple of emails produced by Defendants nearly a year ago – which Plaintiff had for more than 6 months before she filed her last amended complaint in July 2019."[18] Defendants contend that good cause does not exist to permit the proposed amendment because Plaintiff has not been diligent. Specifically, they emphasize that Plaintiff knew that Ms. Phillips may have relevant information, given that she signed the termination letter and attended grievance meetings, but that Plaintiff "made no efforts throughout the course of discovery . . . to verify this."[19] Defendants add that Plaintiff's purportedly new evidence, the two email chains, were produced to her on January 31, 2019, and that only lack of diligence could explain her approximate 10-month delay in seeking leave to amend.[20] Defendants contend that they would be prejudiced by the amendment because discovery would need to be reopened, and the dispositive

---

[16] Docket 99 at 2.

[17] Docket 99 at 2–3.

[18] Docket 106 at 2.

[19] Docket 106 at 7.

[20] Docket 106 at 7–8.

motion deadlines would have to be pushed back again.[21] Moreover, Defendants maintain that the amendment would be futile, because Plaintiff's allegations against Ms. Phillips based on the two email chains "do nothing to implicate Ms. Phillips . . . of conspiracy" and thus do not "establish that claims under Section 1981 or Section 1985(3) against Ms. Phillips would have any reasonable chance of success."[22] Finally, Defendants request that the Court award sanctions to Defendants in an amount equal to the fees incurred in opposing the motion.[23]

Plaintiff, in turn, defends the delay in bringing the current motion to amend, noting that "until [Plaintiff] found the [emails] . . . there was not information to conclude that Ms. Phillips was playing an active role in working to undermine [Plaintiff's] employment."[24] Plaintiff maintains that Ms. Philips "did not participate in the investigation that led to the termination" and therefore the termination letter that she signed was not evidence of "an active role."[25] Plaintiff adds that her "understanding was that [Ms. Phillips'] role [in signing and delivering the letter] was proxy for" another defendant, who was out of the office.[26] Plaintiff's counsel explains that it took time to go through the 3,375 pages of discovery produced on

---

[21] Docket 106 at 10–11.

[22] Docket 106 at 8–10.

[23] Docket 106 at 12.

[24] Docket 109 at 2.

[25] Docket 109 at 2.

[26] Docket 99 at 2.

January 31, 2019 because she relied on Plaintiff's assistance to decipher the documents, and was otherwise busy litigating this case and attending trial in July in another case.[27] As such, Plaintiff only came across the relevant email chains on October 15, 2019.[28] Plaintiff blames Defendants, in part, for the delay, highlighting the evasiveness of their responses to her interrogatories where "[i]nstead of answering directly, [Defendants] stated objections."[29] Plaintiff disputes that the amendment will cause any prejudice to Defendants, maintaining that discovery need not be reopened and emphasizing that there is no set trial date.[30] Finally, with respect to the substance of the emails, Plaintiff maintains that they demonstrate "the racial discrimination that takes place at Providence" and implicate Ms. Phillips in actions taken behind Plaintiff's back about which she could not have previously known.[31]

"Once [a] district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings," Rule 16 controls.[32] Under Rule 16(b), a court's pretrial scheduling

---

[27] Docket 110 at 2.

[28] Docket 110 at 2–3.

[29] Docket 109 at 3.

[30] Docket 109 at 5.

[31] Docket 109 at 4.

[32] *Johnson v. Mammoth Recreations*, *Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).

order can only be modified "for good cause."[33]  The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment."[34]  While "prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . [and] [i]f that party was not diligent, the inquiry should end."[35]

The Court finds that Plaintiff has not demonstrated diligence or good cause to modify the Court's pretrial scheduling order to permit the proposed amended complaint.  Given that Ms. Phillips signed and delivered the termination letter and attended grievance meetings, Plaintiff could have inquired during discovery (which is now closed) whether Ms. Phillips had any further involvement in the events at issue in this case rather than assuming otherwise based on Plaintiff's "understanding" of Ms. Phillips' role.[36]  Moreover, Plaintiff has had the emails on which she bases her motion since January 31, 2019, ten months before she filed this motion, and six months before the Court granted her last request to amend the complaint.  In that instance, the Court warned Plaintiff's counsel that she had not been the "model of diligence" and only granted Plaintiff permission to amend the complaint because an extension to discovery had mitigated the prejudice to

---

[33] Fed. R. Civ. P. 16(b)(4); *see also Mammoth Recreations, Inc.*, 975 F.2d at 608.

[34] *Mammoth Recreations, Inc.*, 975 F.2d at 609.

[35] *Id.*

[36] Docket 99 at 2.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Pending Motions
Page 8 of 16

Defendants.[37]  Now, discovery is closed, and no such mitigation exists.  Because the Court finds that there is not good cause to modify the scheduling order to allow Plaintiff to amend the complaint, it need not reach the question of whether the proposed amendment would have been futile.

**II.     Plaintiff's Motion to Challenge Confidentiality and Notice of Filing Document Under Seal**

On August 24, 2018, the parties filed a proposed protective order, which the Court entered on August 30, 2018.[38]  The Protective Order provides that the parties can mark materials as confidential, thereby setting limits on their disclosure.[39]  Confidential materials are defined as including:

> confidential or sensitive proprietary, business, commercial, and personal information, including, but not limited to, medical records and information relating to person [sic] who are not parties to this case and information about former employees or contractors that is of a confidential or private nature, including current or former employees' names, residence addresses, and telephone numbers; other personnel or business information that could unnecessary [sic] expose one or more of the defendants to liability if disseminated to the public and/or that parties believe one or more of them may have an obligation to protect as private information.[40]

---

[37] Docket 90 at 9.

[38] Docket 33; Docket 36.

[39] Docket 33 at 2–3.

[40] Docket 33 at 2.

In the event a party wishes to file confidential material with the Court, the Protective Order provides that the parties shall meet and confer to determine whether "the designating party will remove the confidential designation, whether the document can be redacted, or whether a motion to seal or stipulation and proposed order is warranted."[41]

In connection with Plaintiff's pending motion to amend the complaint, Plaintiff's counsel requested that Defendants lift the "confidential" designation on two email chains she wished to attach as exhibits.[42] Defendants agreed to remove the confidentiality designation for one of the exhibits—provided last names were partially redacted—but would not agree to do so for the other.[43] Accordingly, when Plaintiff filed the pending motion to amend/correct the complaint, she filed the email chain under seal, as Exhibit 1.[44] However, Plaintiff simultaneously filed a motion to unseal Exhibit 1.[45]

The email chain at issue in Exhibit 1 is between InYoung Lee, the Providence HR Strategic Partner, and members of Plaintiff's management team, including Vicky Phillips, and Kelli Rinas, Clinical Nurse Manager, James Efird,

---

[41] Docket 33 at 4 (Section 4.3).

[42] Docket 100 at 2; Docket 100-1.

[43] Docket 100 at 2.

[44] Docket 99 at 3; Docket 99-1. On December 2, 2019, Plaintiff followed up with a motion to seal Exhibit 1, for completeness. Docket 102 at 1.

[45] Docket 100.

Assistant Clinical Manager, and Brenda Franz, Director of Medical Surgical Services.[46] Ms. Lee's email summarizes talking points for a meeting scheduled with Plaintiff the following day, including a collection of issues and concerns raised by her coworkers.[47] Among other things, the list includes specific examples of Plaintiff's alleged treatment of patients.[48]

In her motion to unseal Exhibit 1, Plaintiff contends that it "does not fit under any parameter of the definition of confidential material" as defined in the Protective Order.[49] Plaintiff relays that during the meet-and-confer, Defendants only raised two concerns: the disclosure of employees' names and Defendants' potential exposure to further litigation because of the contents of the email chain.[50] Plaintiff maintains that the first concern could be alleviated by redacting the names of the employees, and that the second concern is baseless as the email chain does not disclose any "medical errors."[51] Lastly, Plaintiff adds that Defendants used a blanket confidentiality designation for all 3,375 pages of their production, and requests that the Court "order defendants to go through the discovery marked

---

[46] Docket 99-1. The Court only refers to aspects of the email made public by Defendants' filing at Docket 104.

[47] Docket 102-1; Docket 104 at 3.

[48] Docket 102-1.

[49] Docket 100 at 2.

[50] Docket 100 at 2–3.

[51] Docket 100 at 3.

confidential and either remove the confidential designation or provide in writing a legitimate basis for the claim of confidentiality."[52]

Defendants oppose Plaintiff's motion to unseal Exhibit 1, maintaining that the email chain contains personal patient health information and identifies by name employees who complained about Plaintiff's conduct.[53] Defendants emphasize that the email chain includes "specific instances in which [Plaintiff] failed to work collaboratively with her co-workers, at times to the detriment of patient care" and "includes complaints and areas of concern regarding Plaintiff's procedural patient care practices, with specific reference to the treatment being provided to patients."[54] Defendants explain that they designated the email chain confidential because the substance constitutes "medical records and information relating to person [sic] who are not parties to this case" and "other personnel or business information that could unnecessary [sic] expose one or more of the defendants to liability if disseminated to the public and/or that parties believe one or more of them may have an obligation to protect as private information," which are both categories of information covered by the Protective Order.[55] Defendants contend that unsealing Exhibit 1 would cause harm to third-parties, and Defendants,

---

[52] Docket 100 at 3.

[53] Docket 104 at 2.

[54] Docket 104 at 3.

[55] Docket 104 at 3–4 (quoting Protective Order at Docket 33) (alterations in Defendants' brief).

because (1) it would constitute disclosure of personal or sensitive medical information, (2) it would run counter to Defendants' public policies to protect internal complaints, and (3) it could subject Defendants to future litigation because the email includes concerns about Plaintiff's procedural care practices.[56] Defendants point to the Providence Code of Conduct, which requires employees to report any concerning activity, and which promises to maintain confidentiality to the extent possible.[57] Defendants argue that it is in the "private and public interest" to maintain confidentiality of complainants because the public trusts Providence with their care and benefits from reports of concerning work conduct.[58]

Plaintiff disputes that Exhibit 1 is a medical record, emphasizing that there is no patient information in the email chain.[59] Plaintiff also challenges Defendants' contention that employees who made reports would be harmed by the disclosure as Plaintiff is not in a position to retaliate against anyone.[60] Finally, Plaintiff contends that Defendants' concerns about exposure to other litigation are unfounded as the statute of limitations has already passed and, in any event, any claims would be baseless as Plaintiff did nothing wrong.[61] Plaintiff concludes that

---

[56] Docket 104 at 5–6, 8–9.

[57] Docket 104 at 8.

[58] Docket 104 at 8.

[59] Docket 108 at 1.

[60] Docket 108 at 1–2.

[61] Docket 108 at 2.

Case No. 3:18-cv-00087-SLG, *Graciani v. Providence Health & Services, et al.*
Order re Pending Motions
Page 13 of 16

there is "no expectation of privacy or privilege that governs this document" and that it is "evidence that should not be hidden."[62]

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents."[63] However, courts "treat judicial records attached to dispositive motions differently from records attached to non-dispositive motions."[64] The Ninth Circuit has "'carved out an exception to the presumption of access,' for a '*sealed discovery document* [attached] to a *non-dispositive* motion,' such that 'the usual presumption of the public's right of access is rebutted.'"[65] "The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials."[66] Indeed, "[t]he application of a strong presumption of access to sealed records, not directly relevant to the merits of the case, would eviscerate the 'broad power of the district court to fashion protective orders.' Thus, a 'particularized showing,' under the 'good cause' standard of Rule 26(c) will

---

[62] Docket 108 at 5.

[63] *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Communs., Inc.*, 435 U.S. 589, 597 n.7 (1978)).

[64] *Id.* at 1180.

[65] *Id.* at 1179 (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (internal citations omitted) (emphasis and alterations in original).

[66] *Kamakana*, 447 F.3d at 1179.

'suffice[] to warrant preserving the secrecy of sealed discovery material attached to nondispositive motion,'" such as Exhibit 1.[67]

The Court finds that Defendants have made the requisite showing of good cause to keep Exhibit 1 under seal. Specifically, while the Court agrees with Plaintiff that Exhibit 1 does not contain actual medical records, it finds that the email chain contains detailed descriptions of alleged incidents involving patients, including specific patient treatments by Plaintiff.[68] Disclosure of this sensitive information to the public could harm not only those patients being discussed in the email, but all patients at Providence, by raising concerns about the confidentiality of their care. These concerns outweigh the public and private interests in having access to this document.[69]

Finally, the Court will not order Defendants to undergo a wholesale revision of their confidentiality designations, as Plaintiff requests. The Protective Order

---

[67] *Id.* at 1180. *See also Phillips v. General Motors, Co.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (The "party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted . . . If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.").

[68] Docket 102-1 at 3–4.

[69] The Court has considered whether redaction would be sufficient to protect the material, and finds that it is not. *See Father M. v. Various Tort Claimants*, 661 F.3d 417, 425 (9th Cir. 2011) ("[E]ven when the factors in this two-part test weigh in favor of protecting the discovery material . . . a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure.").

provides a mechanism for challenging confidentiality designations as needed, which includes a provision for judicial intervention if necessary.[70]

**CONCLUSION**

In light of the foregoing, Plaintiff's Motion to Permit Second Amendment of Complaint After Expiration of Deadline to Amend at Docket 99 is DENIED, Plaintiff's Motion For Filing Document Under Seal at Docket 102 is GRANTED, and Plaintiff's Motion to Challenge Confidentiality and Notice of Filing Document Under Seal at Docket 100 is DENIED. The Court will not grant attorney's fees to either party with respect to these motions.

DATED this 10th day of January, 2020, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[70] Docket 33 at 6.