IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DEBRA RENA GRACIANI,

                Plaintiff,

    vs.

PROVIDENCE HEALTH &
SERVICES, KELLI RINAS, JAMES
EFIRD, BRENDA FRANZ, and
JAMES BLANKENSHIP,

                Defendants.

Case No. 3:18-cv-00087-JMK

**ORDER REGARDING
PENDING MOTIONS**

        Before the Court are several pretrial motions. At Dockets 444, 445, 446, 447, and 448, Defendants Providence Health & Services, Kelly Rinas, and Brenda Franz (collectively "Defendants") move *in limine* to preclude Plaintiff Debra Rena Graciani from introducing certain evidence at trial. At Docket 469, Defendants also object to Plaintiff's designation of two individuals as trial witnesses. Each motion is fully briefed. Additionally, at its Final Pretrial Conference on June 11, 2024, the Court *sua sponte* raised the issue of the parties' stipulated bifurcation of trial.

## I.    BACKGROUND

### A.    Factual Background

This is an employment discrimination lawsuit arising from Ms. Graciani's termination from her position as a nurse in the dialysis unit at Providence in 2016.[1] Between 2015 and 2016, Ms. Graciani, who identifies as African-American, raised concerns about race-based preferences in employee scheduling in her unit, retaliation, and harassment.[2] During the same period, Providence received a number of complaints that Ms. Graciani's behavior was rude or disrespectful.[3] Providence also received complaints that Ms. Graciani had committed medication errors, among other things, which triggered an internal investigation.[4]

On October 8, 2016, Ms. Graciani treated a patient, L.M., in the dialysis suite.[5] After Ms. Graciani finished treating L.M., they were transported to the progressive care unit and passed away.[6] Following this incident, Providence investigated the handoff from Ms. Graciani to staff in the progressive care unit and Ms. Graciani was placed on paid administrative leave.[7] On November 1, 2016, Providence terminated Ms. Graciani.[8] Her termination letter stated that "we have had ongoing discussions with you regarding concerns about your performance, and conduct" and informed Plaintiff that her conduct on

---

[1] *See* Docket 91.
[2] Docket 379 at 2–10.
[3] *Id.*
[4] *Id.* at 7–10.
[5] *Id.* at 10.
[6] *Id.* at 10–11.
[7] *Id.* at 11.
[8] *Id.* at 12.

October 8, 2016, "violates Providence policy, the Code of Conduct, State of Alaska/Board of Nursing Statutes, and previous direction."[9]

Following union grievance procedures and arbitration, Providence reduced Ms. Graciani's termination to a written warning and reinstated her to a nursing position in Providence's Intensive Care Unit ("ICU") on January 24, 2018.[10] However, Providence's Chief Nurse Executive reported Ms. Graciani to the Board of Nursing, which resulted in a Division of Licensing proceeding.[11] On June 13, 2022, the Administrative Law Judge, Judge Mandala, presiding over the proceeding issued a notice and proposed decision revoking Ms. Graciani's nursing license.[12] Shortly thereafter, on August 11, 2022, Providence provided Ms. Graciani with a notice of termination of employment.[13]

Ms. Graciani appealed the Board of Nursing decision to the Alaska Superior Court.[14] On November 24, 2023, the Superior Court affirmed the Board's decision.[15]

## B.    Procedural Background

Over the course of this litigation, the Court has narrowed the claims Ms. Graciani may present at trial and the defendants against whom she may assert them. At Docket 379, the Court granted summary judgment and dismissed several of Ms. Graciani's claims, including all claims against James Efird and James Blankenship. Remaining as defendants are (1) Providence Health & Services, (2) Brenda Franz, the

---

[9] *Id.*
[10] *Id.* at 13–14.
[11] *Id.*
[12] Docket 424-1.
[13] Docket 426-3.
[14] Docket 424-2.
[15] *Id.*

Clinical Director of Nursing at Providence, and (3) Kelly Rinas, the Clinical Nurse Manager at Providence. Three claims remain against these defendants: (1) a Title VII disparate treatment claim against Providence; (2) a Title VII retaliation claim against Providence; and (3) a § 1981 claim against all Defendants. Ms. Graciani also seeks punitive damages.

Additionally, at Docket 437, the Court took judicial notice of a state administrative proceeding and a state court proceeding and granted partial summary judgment in favor of Defendants on their after-acquired evidence defense. The Court concluded that "if Ms. Graciani succeeds on her claims [at trial], Providence does not have to offer reinstatement or provide front pay, and must only provide backpay from the date of the unlawful discharge to November 18, 2021, when Providence employees discovered Ms. Graciani's misconduct."[16]

## II. LEGAL STANDARD

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area."[17] A district court's power to rule on motions *in limine* arises out of its "inherent authority to manage the course of trials."[18] Rulings on motions *in limine* are preliminary in nature, as a "district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling."[19]

---

[16] Docket 437 at 19.
[17] *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).
[18] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).
[19] *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *id.* at 41–42).

### III.   DISCUSSION

**A.       Defendants'** *Motion in Limine No. 1*

At Docket 444, Defendants move *in limine* for the Court to bar Ms. Graciani from presenting argument or evidence regarding her alleged mental, emotional, spiritual, and medical damages.[20]  They argue that Ms. Graciani has not designated an expert who is qualified to opine on over 100 alleged medical conditions and risks that she claims to have suffered as a result of her alleged injuries in this case.[21]  Defendants further argue that Ms. Graciani may not offer her lay opinion as to these damages as she is not a licensed psychologist, psychiatrist, therapist, or medical doctor and her opinion is irrelevant and more prejudicial than probative.[22]  Defendants do not dispute that Ms. Graciani "may present 'garden-variety emotional distress' evidence in the form of generalized testimony from Plaintiff that she felt insulted, suffered some hurt feelings, resents Defendants' actions, and/or that her life was temporarily disrupted by Defendants' purported conduct."[23]

In opposition, Ms. Graciani argues that "[a] plaintiff in a civil rights case is not required to support the compensatory damages remedy with testimony from expert medical practitioners" and that a Title VII plaintiff can prove emotional injury without medical support.[24]

---

[20] Docket 444 at 4, 10–11.
[21] *Id.* at 8–9 (citing Ms. Graciani's interrogatory responses).
[22] *Id.* at 5, 11–14.
[23] *Id.* at 6 n.3.
[24] Docket 450 at 2 (citing *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996)).

*Graciani v. Providence Health & Services, et al.*                                      Case No. 3:18-cv-00087-JMK
Order Regarding Pending Motions                                                                                         Page 5
Case 3:18-cv-00087-JMK   Document 490   Filed 06/28/24   Page 5 of 38

Two evidentiary and legal principles are at play with respect to the issue of proving compensatory damages at trial in this case. First, "[t]he Ninth Circuit has repeatedly held that plaintiff's testimony regarding emotional damages is sufficient evidence for a jury to award damages."[25] However, the Federal Rules of Evidence limit the testimony a lay witness may offer. "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[26]

Given these principles, Ms. Graciani may testify with respect to the emotional distress she felt as a result of Defendants' alleged conduct. She also may testify to those things rationally based on her perception, such as how Defendants' alleged conduct interrupted her life and work. However, Ms. Graciani is a lay witness, not an expert. Therefore, her testimony may not stray into the realm of opinion based on scientific, technical, or other specialized knowledge. For example, although Ms. Graciani may testify to her subjective experience of distress, including how the alleged conduct impacted her health, she may not opine on whether this distress caused her to suffer particular medical conditions, including mental health conditions, or impacted her risk of suffering such conditions in the future. Such testimony would require medical expertise, which is

---

[25] *Larson v. Nanos*, No. CV-14-01592-TUC-DCB, 2016 WL 4592184, at *6 (D. Ariz. June 21, 2016), *aff'd sub nom. Larson v. Napier*, 700 F. App'x 609 (9th Cir. 2017) (citing *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000)).

[26] Fed. R. Evid. 701.

scientific, technical, and specialized.[27]  Ms. Graciani never disclosed any expert witness who may opine as a medical expert as Federal Rule of Civil Procedure 26(a)(2) requires, depriving Defendants of the opportunity to depose that expert and designate a rebuttal expert.

Accordingly, Defendants' *Motion in Limine* at Docket 444 is **GRANTED**. Ms. Graciani may testify to her emotional distress, but must do so based on her perceptions and experiences.  She may not offer opinions based on scientific, technical, or specialized knowledge, including her opinions as to potential medical diagnoses.

## B.    Defendants' *Motion in Limine No. 2*

Next, at Docket 445, Defendants move *in limine* to preclude Ms. Graciani from seeking purported lost overtime, lost retirement, medical expenses, attorney's fees incurred in an unsuccessful defense of her nursing license, and future "tax neutralization."

As explained below, the motion is **GRANTED IN PART AND DENIED IN PART**.

### 1.    Mr. Gallela's calculations of lost overtime, retirement, and medical benefits are admissible

Defendants argue that Plaintiff's expert on economic damages, Francis Gallela, failed to base his calculations of lost overtime, retirement, and medical benefits on sufficient facts and data, his methodology for calculating such damages is unreliable, and

---

[27]  *E.g., Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)) ("Under our case law, lay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make.'").

he failed to account for obvious, alternative explanations for the difference between Plaintiff's pre-termination earnings and lost earnings.[28]

Ms. Graciani responds that Mr. Gallela is qualified, that he permissibly derived his calculations of lost overtime, retirement, and benefits from past earnings, and that his report acknowledges that overtime is not guaranteed.[29]

The party who is the proponent of an expert's testimony has the burden of proving its admissibility.[30]  The admissibility of expert opinions is controlled by Federal Rule of Evidence 702, which was modified after *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[31] and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, the Supreme Court articulated a two-step inquiry that a trial court, acting in its gatekeeping role, must undertake to determine if expert testimony is admissible.[32]

---

[28] Docket 445 at 17–20.
[29] Docket 451 at 3–4.
[30] *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).
[31] 509 U.S. 579, 597 (1993).
[32] *United States v. Finley*, 301 F.3d 1000, 1007–08 (9th Cir. 2002).

"First, the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"[33]  This "reliability" analysis is "a flexible one." [34]  Courts may consider several factors, including "(1) 'whether a theory or technique can be tested'; (2) 'whether it has been subjected to peer review and publication'; (3) 'the known or potential error rate of the theory or technique'; and (4) 'whether the theory or technique enjoys general acceptance within the relevant scientific community.'"[35]  Evidence is unreliable if it is based on "subjective belief or unsupported speculation."[36]

Second, the trial court "must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact."[37]  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."[38]

Ultimately, "[w]hen an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony."[39]  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[40]

---

[33] *Id.* at 1008 (quoting *Daubert*, 509 U.S. at 592–93)).
[34] *Specter v. Texas Turbine Conversions, Inc.*, 505 F. Supp. 3d 936, 943 (D. Alaska 2020) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) *reconsideration denied by Specter v. Rainbow King Lodge, Inc.,* No. 3:17-cv-00194-TMB, 2020 WL 7396919 (D. Alaska Dec. 16, 2020).
[35] *Id.* (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)).
[36] *Daubert*, 509 U.S. at 590.
[37] *Finley*, 301 F.3d at 1008 (citing *Daubert*, 509 U.S. at 592–93)).
[38] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).
[39] *Id.* at 565.
[40] *Id.* at 564.

Defendants argue that Mr. Gallela's calculations related to overtime are unreliable under *Daubert*'s first prong because they rely on the CBA, which does not guarantee minimum overtime, they do not take into account the fluctuating availability of overtime, Ms. Graciani's past participation in a training program that inflated her overtime, and they do not account for Providence's recent efforts to reduce overtime.[41]  Essentially, Defendants attack the assumptions underlying Mr. Gallela's calculations, rather than his methodology.  Mr. Gallela's expert testimony is not subject to exclusion on this basis.  The "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."[42]  Defendant's observations with respect to Mr. Gallela's starting assumptions are fodder for cross-examination and may influence the weight a jury may assign to his opinion, but do not go to the soundness of his calculation method.

Similarly, Defendants argue that "Mr. Gallela's lost wages/overtime calculation must be stricken as unreliable because there are obvious alternative explanations for the differences between Plaintiff's pre-termination earnings and lost earnings mitigation."[43]  And they contend Mr. Gallela's failure to consider a number of factors related to the availability of overtime constitutes a failure to account for an obvious alternative explanation.  Defendants are correct that "whether an expert has adequately

---

[41] Docket 445 at 17–19.

[42] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)).

[43] Docket 445 at 19.

accounted for obvious alternative explanations" is an additional factor that courts consider in their reliability analysis.[44] But their argument focuses on purportedly flawed assumptions that Mr. Gallela made. As discussed, they may raise these concerns on cross-examination, but they do not warrant exclusion of Mr. Gallela's opinion.

Additionally, Defendants assert that Mr. Gallela's calculations are not based on "sufficient facts or data" as Federal Rule of Evidence 702(b) requires because he relied on Ms. Graciani's counsel's representations and calculations counsel performed.[45] Moreover, Defendants argue that Mr. Gallela did not consider the component of her earnings that constituted overtime wages, only total compensation.[46] These arguments fail for the same reasons articulated above. They attack the factual basis of Mr. Gallela's opinion, which "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."[47]

In a footnote, Defendants move to exclude Mr. Gallela's calculations with respect to Ms. Graciani's lost retirement and medical benefits on the same bases as they moved to exclude calculations of lost overtime: that Mr. Gallela's calculation of these expenses was based on faulty assumptions and Ms. Graciani's unverified representations regarding her insurance costs.[48] As discussed, Mr. Gallela's opinion may be attacked on cross-examination, but is not subject to exclusion.

---

[44] *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 546 (N.D. Cal. 2012) (citing *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)).

[45] Docket 445 at 19.

[46] *Id.*

[47] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d at 1069 (citing *Hartley*, 310 F.3d at 1061).

[48] Docket 445 at 13–14, 20 n.6.

## 2. Mr. Gallela's opinion is not subject to exclusion on Rule 703 grounds

Defendants also contend that Mr. Gallela's opinion must be excluded under Rule 703 because his method for calculating income is not a method usually relied on in his field.[49] Specifically, they assert that Mr. Gallela's methods "strayed from those reasonably relied upon in the economic field" as "there is no theory of authority that stands for the proposition that, because someone worked overtime in the past, they are guaranteed to work overtime in the future."[50] Ms. Graciani responds that Mr. Gallela used Ms. Graciani's prior pay, including overtime pay, as a starting point.[51] She argues that Mr. Gallela followed a methodology generally relied upon in economics, that is, predicting future earnings from past earnings and a person's work habits.[52]

While Rule 702 focuses on an expert's methodology, Rule 703 focuses on the data underlying their opinion. Under Rule 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."[53]

Defendants' argument with respect to Mr. Gallela's method is not a Rule 703 argument, but rather an argument that Mr. Gallela's opinion is not reliable under Rule 702 and *Daubert* because his theory does not "enjoy[] general acceptance within the relevant

---

[49] *Id.* at 20–21.
[50] *Id.* at 21.
[51] Docket 451 at 7.
[52] *Id.* at 8.
[53] Fed. R. Evid. 703.

scientific community."[54]  Defendants have not argued that the data Mr. Gallela used to calculate lost earnings—Mr. Graciani's past earnings—is inadmissible.  And, as discussed, evidence that Mr. Gallela's opinion is based on flawed assumptions is a proper topic for cross-examination, but not sufficient to exclude Mr. Gallela's opinion.

### 3. Ms. Graciani may not seek attorney's fees incurred in the Board of Nursing proceeding as part of damages

Defendants assert that Ms. Graciani may not seek as damages the attorney's fees and costs incurred in her unsuccessful defense of her nursing license.[55]  They argue that no authority provides for such fees and, at most, Ms. Graciani could seek fees incurred in this proceeding following trial, not as part of the jury's damages award.[56]

Ms. Graciani argues that a damages award must include attorney's fees incurred in defending her license in order to make her whole.[57]  She reasons that these costs were attributable to her wrongful termination as the termination triggered her employer to report her discharge to the Board of Nursing.[58]

A plaintiff who succeeds on a Title VII or § 1981 claim may recover compensatory, or make-whole, damages caused by a defendant's discrimination.[59]  Here, however, the Board of Nursing proceeding and the fees incurred are not sufficiently causally connected to the alleged discriminatory acts in this suit.  Although Ms. Graciani's

---

[54] *Id.* (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)).
[55] Docket 445 at 21–22.
[56] *Id.*
[57] Docket 451 at 10.
[58] *Id.*
[59] 42 U.S.C. § 1981a(a)(1); *see also Smith v. Wade*, 461 U.S. 30, 52 (1983).

termination triggered Providence to report to the Board of Nursing,[60] the Board of Nursing disciplinary proceeding is highly attenuated from this report. First, Providence's report of Ms. Graciani's discharge was not the first complaint the Board of Nursing received with respect to Ms. Graciani. Ms. Graciani first came to the Board's attention in 2016 "following a colleague's complaint" and "six months before her November 2016 termination."[61] "The initial complaint, submitted by a coworker, alleged medication errors and failure to follow physician orders."[62] This initial complaint, not Providence's report, caused the Board to initiate an investigation.[63] Indeed, Ms. Graciani's termination occurred while an investigation was ongoing.[64]

Furthermore, following Providence's report that they had discharged Ms. Graciani, the Board of Nursing independently decided to seek to revoke Ms. Graciani's license. And they did so on additional and separate bases that the purported basis for Ms. Graciani's termination. Providence terminated Ms. Graciani in 2016 for alleged issues related to her handoff communication on October 6, 2016.[65] The Board of Nursing disciplinary proceeding swept more broadly, alleging "six counts of misconduct across four broad subjects—patient care/nursing decisionmaking, falsification of a patient record, hostile and disruptive behavior, and improper access and/or handling of confidential patient

---

[60] Alaska Stat. § 08.68.277 (requiring employers of licensed nurses to report when they discharge a licensed nurse).
[61] Docket 424-1 at 5.
[62] Id.
[63] Id. at 56.
[64] Id.
[65] Docket 379 at 11–12.

Graciani v. Providence Health & Services, et al.                    Case No. 3:18-cv-00087-JMK
Order Regarding Pending Motions                                                        Page 14
Case 3:18-cv-00087-JMK   Document 490   Filed 06/28/24   Page 14 of 38

records."[66]  Ultimately, the attorney's fees incurred in the Board of Nursing proceeding are not sufficiently causally connected to Ms. Graciani's allegedly discriminatory termination and thus may not be recovered as damages.

Finally, Ms. Graciani cannot recover attorney's fees for the Board of Nursing proceeding as part of an attorney's fee award in this action, rather than as a part of damages. Litigants in federal court bear their own fees and costs unless Congress authorizes an award.[67]  And although Congress has authorized recovery of fees in Title VII cases, those fees are limited to those incurred in the Title VII action itself.[68]

### 4.    Ms. Graciani may not present evidence of a "tax neutralization" amount as part of damages

Finally, Defendants argue that Ms. Graciani should be precluded from presenting evidence related to a "tax neutralization"[69] amount as part of damages because such evidence is irrelevant, speculative, would be more prejudicial than probative, and unsupported by a competent expert.[70]

Ms. Graciani responds that the Ninth Circuit has approved tax neutralization as a part of a damages award and that Mr. Gallela can explain the calculation.[71]

---

[66] Docket 424-1 at 6.
[67] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 271 (1975).
[68] 42 U.S.C. § 2000e-5(k).
[69] Tax neutralization or tax "gross up" refers to an additional measure of damages to account for taxes that will be assessed on a damages award.
[70] Docket 445 at 23–25.
[71] Docket 451 at 11.

"Title VII exists in large part 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'"[72]  Accordingly, Title VII provides trial courts "considerable equitable discretion to ensure adequate compensation."[73]  Noting this discretion and that back-pay awards are taxable, the Ninth Circuit concluded that "district courts have the discretion to 'gross up' an award to account for income-tax consequences."[74]  However, the Circuit specified that "the decision to award a gross up—and the appropriate amount of any such gross up—is left to the sound discretion of the district court" and that "[t]here may be many cases where a gross up is not appropriate for a variety of reasons, such as the difficulty in determining the proper gross up or the negligibility of the amount at issue."[75]  "In any case, the party seeking relief will bear the burden of showing an income-tax disparity and justifying any adjustment."[76]

Because a tax "gross up" award is a form of equitable relief, it is not within the province of the jury to determine.[77]  Mr. Graciani may apply to the Court for a tax "gross up" on any backpay award she wins after trial.  But she may not present evidence or argument at trial in support of such an award as it is not an issue for the jury's consideration or relevant to such an issue.  If Ms. Graciani applies for such an award, she

---

[72]  *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1115 (9th Cir. 2017) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)).
[73]  *Id.*
[74]  *Id.* at 1116–17.
[75]  *Id.* at 1117.
[76]  *Id.*
[77]  *See id.* at 1115–17 (discussing tax "gross ups" as a form of equitable relief trial courts may provide to ensure a plaintiff is made whole for discrimination).

must submit a new calculation as Mr. Gallela's current calculation is based on the total amount of compensatory damages Ms. Graciani seeks, not solely backpay.

A trial court in this Circuit has distinguished between "gross ups" of back-pay awards and "gross ups" of compensatory damages awards.[78] The District Court for the District of Oregon persuasively reasoned that the Ninth Circuit's rationale for allowing "gross ups" of back pay awards does not apply to compensatory damages awards.[79] Because back pay awards are paid as a lump sum, they may push a plaintiff into a higher tax bracket than that in which they were in their work life, causing them to pay "more of [their] salary in taxes than [they] otherwise would have and, consequently, . . . put[ting them] in a worse financial position than [they] would have been in absent Defendant's conduct."[80] "Hence, in order to make [a plaintiff] whole, Defendant must reimburse Plaintiff for the cost of the negative tax consequences suffered as a result of making this payment in one lump sum."[81]

"By contrast, compensatory damages are meant to be an independent award, *beyond* what Plaintiff would have earned in wages, paid for the purpose of offsetting the pain and suffering Plaintiff endured as a result of Defendant's conduct; in other words, it is additional income."[82] "Consequently, Plaintiff was not put in a worse position as result

---

[78] *See Graham v. Brennan*, No. 1:16-CV-00242-CL, 2017 WL 5505800, at *2 (D. Or. Sept. 26, 2017), *report and recommendation adopted*, No. 1:16-CV-00242-CL, 2017 WL 5505007 (D. Or. Nov. 16, 2017).
[79] *Id.*
[80] *Id.* at *3.
[81] *Id.*
[82] *Id.* (emphasis in original).

of having to pay taxes on this award; rather, she received additional income *because of* the lawsuit and was required to pay taxes on it."[83]

Mr. Gallela's "gross up" is based on his calculation of Ms. Graciani's total gross award.[84] Therefore, it far exceeds what may be permissibly recovered to offset the negative tax implications of a backpay award. Furthermore, Mr. Gallela's report does not show the income tax disparity that would result from a backpay award and justify the amount claimed.[85] Instead, it simply states that amount was calculated by a third-party CPA firm.[86] Accordingly, Mr. Gallela's current report is insufficient to carry Ms. Graciani's burden as the party seeking relief to show an income-tax disparity and justify any adjustment. A new calculation will be required if Ms. Graciani's seeks a tax "gross up" following trial.

## C.    Defendants' *Motion in Limine No. 3*

At Docket 446, Defendants move *in limine* to preclude Ms. Graciani from introducing evidence on issues and claims that this Court has already adjudicated on summary judgment. Specifically, they argue that Ms. Graciani may not introduce certain evidence with respect to (1) scheduling practices during Ms. Graciani's employment; (2) the number of employees Providence employed in the dialysis unit who identified as African-American during Ms. Graciani's employment; (3) alleged segregation of employees within Providence, including in the dialysis department; (4) Providence's

---

[83] *Id.* (emphasis in original).
[84] Docket 138-1 at 6.
[85] *Clemens*, 874 F.3d at 1117.
[86] Docket 138-1 at 6.

Order Regarding Pending Motions     Page 18

Case 3:18-cv-00087-JMK    Document 490    Filed 06/28/24    Page 18 of 38

failure to reinstate Ms. Graciani to the dialysis department; and (5) Ms. Graciani's alleged complaints of racial discrimination to James Efird on February 17, 2015, and on October 27, 2016.[87] In addition, Defendants argue that Ms. Graciani may not introduce evidence that certain conduct constituted adverse employment actions for purposes of determining liability.[88] Finally, Defendants seek that the Court preclude Ms. Graciani from introducing evidence related to claims that were decided and dismissed by the Court on summary judgment.[89] Defendants assert that an order precluding Ms. Graciani from introducing this evidence is necessary because the parties' pretrial Meet and Confer made clear that Ms. Graciani intends to introduce evidence related to these topics despite the Court's summary judgment rulings.[90]

In response, Ms. Graciani insists that evidence that supports a claim that has been dismissed may also support a live claim.[91] And she argues that the evidence Defendants seek to preclude is relevant to the live claims in this case.[92]

The Court will not prospectively address each of the issues Defendants raise. It is possible that with appropriate foundation, certain testimony or evidence related to a dismissed claim is relevant to a live claim and appropriate under Rule 403. However, the Court intends to rigorously enforce its prior orders and will not allow Ms. Graciani to relitigate claims that have been previously dismissed or issues that this Court has decided.

---

[87] Docket 446 at 5–6.
[88] *Id.* at 6.
[89] *Id.*
[90] *Id.* at 12–13.
[91] Docket 453 at 2.
[92] *Id.* at 2–7.

For example, Ms. Graciani may not argue that the after-acquired evidence defense does not apply or present evidence to show Providence would not have terminated Ms. Graciani had it known that she deleted and falsified patient data. On summary judgment, the Court ruled that the defense applies, removing the issue from the jury's consideration.[93] Counsel should review the Court's prior orders on summary judgment at Dockets 379 and 437 in advance of trial.

### D. Defendants' *Motion in Limine No. 4*

At Docket 447, Defendants move *in limine* to preclude Ms. Graciani from introducing evidence that Defendants maintain, or lack, liability insurance to influence the jury's award of damages in this case.[94] They argue that such evidence must be excluded under Federal Rule of Evidence 411, 402, and 403.[95] In their Reply, Defendants highlight that Federal Rule of Evidence 411 precludes a party from introducing a lack of insurance.[96] They also clarify that they do no seek exclusion of evidence that Ms. Graciani received benefits from Providence's worker compensation policy.[97] Ms. Graciani argues that Defendants never produced a liability insurance or a workers' compensation insurance policy in discovery so there is no reason for the instant motion.[98]

Federal Rule of Evidence 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted

---

[93] *See* Docket 437.
[94] Docket 447 at 1.
[95] *Id.* at 5–9.
[96] Docket 467 at 4.
[97] *Id.* at 6.
[98] *See* Docket 455.

negligently or otherwise wrongfully." However, such evidence may be admitted "for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."[99]

Ms. Graciani may not introduce evidence that Defendants have or lack a liability insurance policy. She has not proffered any reason that the introduction of such evidence would be admitted for a purpose such as a witness's bias or prejudice or for any other permissible purpose. The *Motion in Limine* at Docket 447 is **GRANTED**.

E.     **Defendants'** *Motion in Limine No. 5*

At Docket 448, Defendants move *in limine* to preclude Ms. Graciani from rearguing or offering evidence to dispute factual findings made by the Board of Nursing in a prior administrative proceeding.[100] Specifically, Defendants seek to prevent Ms. Graciani from relitigating five factual issues: (1) that she failed to follow handoff protocols and/or to engage in such handoff communications on January 13, January 18, February 11, and October 8, 2016; (2) that she possessed confidential patient health information in her cubby on November 1, 2016; (3) that she failed to administer the antibiotic vancomycin on two occasions in January 2016 despite doctor's orders; (4) that she falsified doctor's order and patient records for a thrombin time test in February 2016; and (5) that she created a hostile and disruptive work environment for her coworkers in dialysis and for patients.[101] Defendants argue that the doctrine of non-mutual, offensive issue preclusion applies to

---

[99] Fed. R. Evid. 411.
[100] Docket 448 at 4.
[101] *Id.* at 4–5.

prevent the relitigation of these factual matters and that the introduction of evidence related to these factual matters would risk inconsistent factual findings, cause undue delay, and waste significant time.[102]

Ms. Graciani responds that Defendants may not introduce as evidence the Board of Nursing's decision in the prior proceeding or the Alaska Superior Court's subsequent decision on appeal.[103] She contends that these decisions are hearsay, should be excluded under Federal Rule of Evidence 403, and are not appropriate for judicial notice.[104] Furthermore, she asserts that applying the doctrine of issue preclusion here would violate her right to a jury trial.[105] And, finally, she argues that Defendants have not shown that the four prerequisites for issue preclusion to apply are met here.[106]

Issue preclusion, or collateral estoppel, "bars the relitigation of issues actually adjudicated in previous litigation."[107] Non-mutual, offensive issue preclusion applies when one party seeks to foreclose an opposing party from litigating an issue that was unsuccessfully litigated in an prior action involving a third party.[108] The U.S. Supreme Court has acknowledged that this kind of issue preclusion may present "unique fairness concerns because it can incentivize plaintiffs to wait on the sidelines 'in the hope that the

---

[102] *Id.* at 14–20.
[103] Docket 456 at 2–3.
[104] *Id.*
[105] Docket 448 at 3.
[106] *Id.* at 4–7.
[107] *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982).
[108] *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

first action by another plaintiff will result in a favorable judgment.'"[109]  "To address this concern, the Supreme Court explained that rather than 'preclude the use of offensive [issue preclusion],' 'the preferable approach' is 'to grant trial courts broad discretion to determine when it should be applied.'"[110]  Accordingly, courts first analyze whether the prerequisites for issue preclusion are met and then weigh fairness considerations, which the U.S. Supreme Court outlined in *Parklane*.

        As explained below, Defendants' motion is **GRANTED**.  Applying issue preclusion is appropriate in this case and Ms. Graciani's evidentiary objections are without merit.

### 1.    Issue preclusion applies to prevent the relitigation of factual findings the Board of Nursing made

        In this case, issue preclusion applies to prevent the relitigation of four of the five factual determinations Defendants identify.

        Courts may give preclusive effect to administrative judgments as long as the traditional criteria for issue preclusion are present.[111]  A party may seek to prevent an opposing party from relitigating an issue it previously litigated unsuccessfully when four conditions are met:  "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."[112]

---

[109]  *Freeman v. Ethicon, Inc.*, 619 F. Supp. 3d 998, 1004 (C.D. Cal. 2022) (quoting *Parklane*, 439 U.S. at 330).

[110]  *Id.* (quoting *Parklane*, 439 U.S. at 331).

[111]  *Plaine v. McCabe*, 797 F.2d 713, 720 (9th Cir. 1986).

[112]  *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012)); *see also Syverson v. Int'l Bus.*

(a)     With respect to four of the five factual disputes, the factual issues at stake are identical to those decided by the Board of Nursing

First, four of the five factual determinations at stake here are identical to those litigated before the Board of Nursing and Alaska Superior Court.  Courts "typically look to four factors to determine whether two issues are 'identical' for purposes of issue preclusion:

> (1)     Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2)     Does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
>
> (3)     Could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?
>
> (4)     How closely related are the claims involved in the two proceedings?"[113]

Although the parties have not addressed these factors in their briefing, four of the five factual findings the Board of Nursing made are identical to factual issues that the parties anticipate litigating in this case.

Defendants seek to prevent Ms. Graciani from relitigating the determination that she failed to follow handoff protocols and/or to engage in such handoff communications on January 13, January 18, February 11, and October 8, 2016.[114]  In the

_Machines Corp._, 472 F.3d 1072, 1078 (9th Cir. 2007) (outlining the Ninth Circuit's prior four-factor test).

[113] _Sec. & Exch. Comm'n v. Stein_, 906 F.3d 823, 828–29 (9th Cir. 2018).

[114] Docket 448 at 4.

Board of Nursing proceeding, Judge Mandala determined as a matter of fact that "evidence established that Ms. Graciani failed to follow appropriate handoff protocol as to patients G.R. and K.A. in January 2016, as to P.F. in February 2016, and as to M.L. in October 2016."[115] These two issues are identical as they will involve the presentation of the same evidence and discovery with respect to each will have embraced the same materials. Although the claims and rule of law that will be applied in this case differs from claims and the rule of law that was applied in the Board of Nursing proceeding, those factors do not weigh against finding the issues identical here. Defendants seek to prevent relitigating of a narrow factual issue, which will not implicate the substantive law that applied in the Board of Nursing proceeding or that applies here.

Next, Defendants seek to prevent relitigation of the determination that Ms. Graciani possessed confidential patient health information in her cubby on November 1, 2016.[116] In the Board of Nursing proceeding, Judge Mandala determined as a matter of fact that "at the time of her termination in 2016, Ms. Graciani was in possession of hundreds of pages of PHI [patient health information], relating to many dozens if not more individual patients, and that she was storing those documents in an unsecured open cubby in the dialysis suite."[117] Here, too, the issues will involve the presentation of the same evidence and discovery with respect to the issues would have embraced the same

---

[115] Docket 424-1 at 58; *see also* Docket 424-2 at 20–21, 36 (affirming the ALJ's factual finding).
[116] Docket 448 at 4.
[117] Docket 424-1 at 45–46; *see also* Docket 424-2 at 31 (affirming the ALJ's factual finding).

information.  And, because the factual issue at stake is narrow, that the claims and rules of law applied are different does not prevent the Court from finding the issues are identical.

Additionally, Defendants assert Ms. Graciani may not relitigate the determination that "she failed to administer the antibiotic vancomycin on two occasions in January 2016 despite doctor's orders."[118]  Judge Mandala found that, on two occasions in January 2016, "Ms. Graciani failed to administer the prescribed antibiotic [vancomycin] during dialysis as directed."[119]  The Alaska Superior Court then concluded this finding was not error.[120]  These issues are identical for the same reasons articulated above:  the anticipated evidence is the same, discovery would have been the same, and the scope of the issue is such that the substantive law applied in the two proceedings is not relevant.

Defendants also insist that Ms. Graciani may not relitigate the finding that "she falsified doctor's order and patient records for a thrombin time test in February 2016."[121]  Judge Mandala concluded that Ms. Graciani entered an order for a Thrombin time test under a doctor's name when that doctor did not order the test.[122]  The issues are identical for the same reasons discussed.

Finally, Defendants argue that Ms. Graciani may not relitigate the finding that "she created a hostile and disruptive work environment for her coworkers in dialysis and for patients."[123]  The Court finds that the issue in the case is not identical to the issue

---

[118] Docket 448 at 4.
[119] Docket 424-1 at 19–22.
[120] Docket 424-2 at 25.
[121] Docket 448 at 4.
[122] Docket 424-1 at 57.
[123] Docket 448 at 4–5.

litigated before the Board of Nursing. The anticipated evidence and discovery as to these two issues will be the same in this case as in the Board of Nursing proceeding. However, "hostile work environment" is a legal term of art in Title VII cases. Therefore, the nature of the claims in this case—employment discrimination claims—means that the issues cannot be "identical" for the purposes of issue preclusion here. The underlying factual findings the Board of Nursing made—that "Ms. Graciani's presence on the dialysis team at Providence negatively impacted the overall working environment" and that "Ms. Graciani engaged in extensive disrespectful and otherwise disruptive behavior towards dialysis coworkers and other hospital staff"—may be identical to issues Ms. Graciani wishes to litigate in this case, but a factual finding that Ms. Graciani created a hostile and disruptive work environment would have a different meaning in this case than it did before the Board of Nursing.[124]

Ms. Graciani asserts that the issues at stake are not identical to those litigated before the Board of Nursing and Alaska Superior Court because the prior proceedings centered on the revocation of Ms. Graciani's nursing license, not her employment claims.[125] But this misconstrues what Defendants seek the Court preclude and focuses on the ultimate issue in the litigation, not the precise factual issue at stake. Ms. Graciani also argues that the focus of the issue preclusion analysis is "on the issue being litigated, not

---

[124] Docket 424-1 at 61–62.
[125] Docket 456 at 4.

the facts involved."[126]  This is incorrect.  Issue preclusion applies both to legal issues and factual determinations.[127]

Four of the five factual findings the Board of Nursing made are identical for purposes of issue preclusion in this case.  However, the finding that Ms. Graciani created hostile and disruptive work environment for her coworkers in dialysis and for patients is not identical and, therefore, issue preclusion with respect to that finding is inappropriate.

> **(b)** **Each issue was actually litigated and decided in the prior proceedings**

Second, each of the four remaining issues was litigated and deciding in the prior proceedings.  Judge Mandala assessed evidence and made factual findings as to each issue Defendants raise in the Board of Nursing Proceeding.[128]  Ms. Graciani argues that Judge Mandala did not consider "the underlying motivation of the defendants as well as the lack of consideration of whether Ms. Graciani was treated in like manner to other employees."[129]  Again, Ms. Graciani mistakes the narrow factual determinations that Defendants argue may not be relitigated for larger issues.  For example, Ms. Graciani may argue that other employees at Providence failed to follow handoff protocols and that she was singled out for punishment when others were not.  However, if issue preclusion

---

[126] *Id.*

[127] *See United States v. Weems*, 49 F.3d 528, 531–32 (9th Cir. 1995); *Oyeniran*, 672 F.3d at 806; *see also Univ. of Tennessee v. Elliott*, 478 U.S. 788, 797 (1986) ("We have previously recognized that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity.").

[128] Docket 424-1 at 19–22, 45–46, 57–58 (citing testimony elicited during the Board of Nursing proceeding and exhibits admitted); *see also* Docket 424-2 at 20–21, 25, 31, 36 (affirming the ALJ's factual finding).

[129] Docket 456 at 5.

applies, Ms. Graciani could not relitigate the narrow factual determination that she "failed to follow appropriate handoff protocol as to patients G.R. and K.A. in January 2016, as to P.F. in February 2016, and as to M.L. in October 2016."[130]

### (c) There was full and fair opportunity to litigate each issue in the prior proceedings

Third, there was a full and fair opportunity to litigate each of these issues in the prior proceedings. In the Board of Nursing proceeding, Ms. Graciani was represented by counsel and had the rights to call and examine witnesses, introduce exhibits, cross-examine witnesses, and impeach witnesses, among other things.[131] And, Ms. Graciani had the right to appeal the ALJ's decision to a state court, which she exercised.[132]

Ms. Graciani argues that she was not afforded a full and fair opportunity to litigate the case before the Board of Nursing because this Court denied her request to use documents produced in this case that were designated as "confidential" under the parties' stipulated protective order.[133] But Ms. Graciani does not identify any document or documents that she wished to admit in the Board of Nursing proceeding and how that evidence relates to the discrete factual issues at stake here.

### (d) Each of the factual findings was necessarily decided

Finally, each of the identified factual determinations were necessary to decide the merits in the prior proceedings. For issue preclusion to apply, an issue must

---

[130] Docket 424-1 at 58; *see also* Docket 424-2 at 20–21, 36 (affirming the ALJ's factual finding).
[131] Alaska Stat. § 44.62.460.
[132] Alaska Stat. § 44.62.560.
[133] Docket 456 at 5.

*Graciani v. Providence Health & Services, et al.*                    Case No. 3:18-cv-00087-JMK
Order Regarding Pending Motions                                                      Page 29
Case 3:18-cv-00087-JMK   Document 490   Filed 06/28/24   Page 29 of 38

have been necessarily decided in the first proceeding.[134] "'[N]ecessarily' . . . means only that the court undeniably decided the issue, not that it was unavoidable for it to do so."[135] "[W]here the court heard evidence and argument from both parties, and specifically ruled on the issue, a party may not escape the ruling's binding effect on the ground that it was not logically essential to the court's ultimate determination."[136]

Here, each of the Board of Nursing's factual findings was necessary to show that Ms. Graciani violated the Board's regulations and that a disciplinary sanction was warranted.[137] Moreover, the Board of Nursing's decision reflects that evidence and argument were offered with respect to each of the factual issues.[138]

Ms. Graciani contends that the fourth element is not met in this case because "[i]ssues of race and protected activity were not necessary nor even considered for the Board of Nursing's decision."[139] Once again, she confuses the ultimate issues in this case with the narrow factual determinations which Defendants argue she may not relitigate.

(e)     The *Parklane* factors do not counsel against giving preclusive effect to the Board of Nursing's factual findings

Having concluded that the four prerequisites for issue preclusion are met with respect to four issues here, the Court must weigh the fairness considerations outlined in *Parklane*. Trial courts have broad discretion to determine when nonmutual, offensive issue

---

[134] *Weems*, 49 F.3d at 532.
[135] *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (citing *id.*).
[136] *Id.* (citing *Weems*, 49 F.3d at 532).
[137] *See* Docket 424-1 at 54–62.
[138] *Id.* at 6–44, 54–62.
[139] Docket 456 at 5.

*Graciani v. Providence Health & Services, et al.*
Order Regarding Pending Motions

Case No. 3:18-cv-00087-JMK
Page 30

preclusion should be applied.[140]  In exercising this discretion, courts weigh fairness considerations, including "whether (1) the [party] had the incentive to adopt a wait and see attitude in the hope that the first action by another [party] would result in a favorable judgment which might then be used against the losing [party]; (2) the [party] had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the [party] might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result" (the "*Parklane* factors").[141]

    Considering the *Parklane* factors, it is appropriate to give preclusive effect to the Board of Nursing and Alaska Superior Court decisions.  Ms. Graciani had no incentive to adopt a wait and see approach to the license revocation proceeding as it directly attacked the source of her livelihood.  Additionally, this litigation had commenced and Ms. Graciani was aware that the outcome of the Board of Nursing and Alaska Superior Court proceedings would bear on this case.  And there is only one judgment, so no risk of inconsistent judgments exists.  Ms. Graciani does have the right to a jury trial in this proceeding, but, beyond that, there is no indication that she lacked procedural opportunities in the prior proceeding that could readily cause a different result in this case.  Indeed, the traditional hallmarks of procedural fairness found in federal court were present in the prior

---

[140] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).
[141] *Syverson*, 472 F.3d at 1079 (internal quotation marks omitted) (citing *id.*).

*Graciani v. Providence Health & Services, et al.*                                      Case No. 3:18-cv-00087-JMK
Order Regarding Pending Motions                                                         Page 31
Case 3:18-cv-00087-JMK   Document 490   Filed 06/28/24   Page 31 of 38

proceedings. As discussed, in the Board of Nursing proceeding Ms. Graciani was represented by counsel and had the rights to call and examine witnesses, introduce exhibits, cross-examine witnesses, and impeach witnesses, among other things.[142] Over the course of 19 days, 31 witnesses testified and the parties presented over 100 exhibits.[143] And, Ms. Graciani had the right to appeal the ALJ's decision to a state court, which she exercised.[144]

### 2. Applying issue preclusion here does not violate Ms. Graciani's jury trial right

Ms. Graciani reasserts an argument she made in opposition to a prior motion for partial summary judgment: that applying issue preclusion to remove factual issues from jury determination violates her right to a jury trial.[145] As she did in the earlier opposition, she cites *Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545 (1990).[146]

Ms. Graciani's argument that the application of issue preclusion in this case would violate her right to a jury trial fails in this instance. First, as the Court previously discussed, *Lytle v. Household Manufacturing, Inc.* is inapposite. The *Lytle* Court concluded that issue preclusion could not apply within the same action, but must involve separate actions.[147]

---

142 Alaska Stat. § 44.62.460.
143 Docket 424-1 at 6.
144 Alaska Stat. § 44.62.560.
145 Docket 456 at 6.
146 *Id.*
147 494 U.S. at 552–54 (noting that the U.S. Supreme Court has "never accorded collateral-estoppel effect to the trial court's factual determinations" where legal and equitable claims in the same action were tried separately).

The Court understands Ms. Graciani's broader point to be that giving preclusive effect to the factual determination of an administrative agency or court where the facts were determined without a jury would impair a party's right to jury trial. Indeed, "[c]ourts interpreting the *Parklane* factors have cautioned that permitting collateral estoppel can implicate a defendant's Seventh Amendment right to have factual issues tried to a jury."[148] District courts within the Ninth Circuit have hesitated to give preclusive effect to factual determinations made in prior bench trials due to fairness considerations.[149] However, "courts are not *automatically prohibited* from granting issue preclusion on account of the fact that the initial action was decided in a bench trial and the subsequent action allows for a jury trial," but "may consider the absence of a jury trial as a *non-dispositive* factor when balancing the equities of issue preclusion."[150] Moreover, where courts have declined to apply issue preclusion, the factual findings were made in prior cases in federal court, not in state court cases where the Seventh Amendment does not apply.[151] Ultimately, the Court may give preclusive effect to the factual determinations of an ALJ and the Alaska Superior Court in proceedings similar to bench trial, but should carefully consider the *Parklane* factors, including whether a party "might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily

---

[148] *Freeman v. Ethicon, Inc.*, 619 F. Supp. 3d 998, 1007 (C.D. Cal. 2022) (citing *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999)).

[149] *See id.* (collecting cases).

[150] *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1036 (C.D. Cal. 2009) (emphasis in original).

[151] *See Freeman*, 619 F. Supp. 3d at 1007 (citing *Andrakin v. S.F. Parking & Traffic Comm'n*, 26 F.3d 129 (9th Cir. 1994)).

cause a different result."[152] The Court has analyzed these factors and determined that the prior proceedings offered ample procedural opportunities and that the parties took advantage of them, rigorously litigating the license revocation for 19 days.

### 3. Ms. Graciani's evidentiary objections lack merit

Ms. Graciani raises several evidentiary objections to the use of the Board of Nursing and Alaska Superior Court decisions. First, he argues that the Board of Nursing decision and Superior Court decision are hearsay and should be excluded as unfairly prejudicial.[153] But Defendants do not proffer these decisions as evidence to be admitted at trial. Indeed, application of the doctrine of issue preclusion here does not require the decisions to be entered as evidence.

Second, Ms. Graciani argues that the Court may not properly take judicial notice of the facts underlying the two decisions.[154] Ms. Graciani is correct that a court can only take judicial notice of the existence of judicial or administrative proceedings, not of the veracity of the facts contained therein.[155] But the Court need not take judicial notice of the facts in either the Board of Nursing decision or the Alaska Superior Court decision to determine that issue preclusion applies. Rather, it may take judicial notice of the existence of those decisions, *i.e.*, that an administrative body has made factual findings with respect to particular issues and that the Alaska Superior Court has affirmed those findings. In so

---

[152] *Syverson*, 472 F.3d at 1079 (internal quotation marks omitted) (citing *Parklane*, 439 U.S. at 330–31).
[153] Docket 456 at 2–3.
[154] *Id.* at 3.
[155] *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein).

*Graciani v. Providence Health & Services, et al.*                    Case No. 3:18-cv-00087-JMK
Order Regarding Pending Motions                                        Page 34
Case 3:18-cv-00087-JMK   Document 490   Filed 06/28/24   Page 34 of 38

doing, it is not assuming the truth of the underlying facts, but acknowledging that other tribunals have made factual findings. Accordingly, Ms. Graciani's evidentiary objections lack merit.

## F. Defendants' Objection to Plaintiff's Designation of Preston Simmons and Rod Hochman as Trial Witnesses

At Docket 469, Defendants file an objection to Ms. Graciani's designation as trial witnesses of two high-ranking officers at Providence. They argue that the proffered testimony is not relevant to liability and that both lack personal knowledge regarding Ms. Graciani and her claims.[156] Furthermore, Defendants argue that the witnesses should be precluded under Federal Rule of Evidence 403 as prejudicial, a waste of time, cumulative, and confusing.[157] Ms. Graciani responds that these witnesses will provide relevant testimony regarding systemic racism in the United States and Providence's values and policies.[158] She also points that this Court previously granted her request to allow her to amend her discovery witness list to include these two witnesses.[159]

Relevant evidence is admissible at trial unless it is subject to exclusion under the Constitution, statute, or the Rules of Evidence.[160] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[161]

---

[156] Docket 469 at 3–6.
[157] *Id.* at 6–7.
[158] Docket 487 at 2–8.
[159] *Id.* at 2 (citing Docket 203).
[160] Fed. R. Evid. 402.
[161] Fed. R. Evid. 401.

Mr. Simmons' and Dr. Hochman's proffered testimony is not relevant because it does not relate to any facts of consequence in this action. Ms. Graciani asserts that Dr. Hochman and Mr. Simmons will testify with respect to systemic racism in society and how Providence as a business is not immune from the effects of racism.[162] She further argues that they will testify to Providence's values, how the organization has fallen short when it comes to equality, and how Providence's policies apply to Black employees and others.[163] But testimony with respect to the broader issue of racial justice in the United States and how Providence, at an organizational level, has been effected by systemic racism is not of consequence in this case, which relates narrowly to how Providence disciplined and terminated Ms. Graciani. Furthermore, testimony regarding Providence's policies is not relevant as whether Ms. Graciani suffered discrimination under organizational policies is not an issue for trial. Some of Providence's policies, such as those with respect to discipline, are at issue, but Ms. Graciani intends to call other witnesses with personal knowledge to testify as to those policies.

Although the Court previously allowed Ms. Graciani to amend her discovery witness list to include these two witnesses, it does not follow that the Court must allow Ms. Graciani to call these witnesses at trial. Discovery may encompass information that is not admissible in evidence.[164] And the issues for trial may be narrower than those about which the parties propounded discovery following motion practice.

---

[162] Docket 487 at 2–3.
[163] *Id.* at 4, 7.
[164] Fed. R. Civ. P. 26(b)(1).

Finally, it is conceivable that these two witnesses may offer testimony on Providence's financial condition that is relevant to punitive damages. However, as the Court will discuss, bifurcation of this case into a liability phase and a punitive damages phase is appropriate. As such, neither witness will offer testimony relevant in the liability phase and may not be called in that phase. The Defendants' *Objection* at Docket 469 is **GRANTED**.

## G.    Bifurcation

In various papers before the Court and at the Final Pretrial Conference, the parties indicated that they stipulated to bifurcate the trial into two phases: a liability phase and a phase related to punitive damages.[165] Although both parties have agreed to a bifurcated trial, the Court decides the structure of trial. Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." District courts have "broad discretion" in shaping appropriate bifurcation.[166]

Bifurcation is appropriate here. Separating trial into an initial liability phase and a second, punitive damages phase will serve judicial economy and prevent potentially prejudicial evidence with respect to Providence's finances from being offered before the jury has made a finding as to liability.

---

[165] Docket 482 at 16.
[166] *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) (affirming the district court's decision to bifurcate liability and damages "for judicial economy and to avoid prejudice and confusion").

# IV.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

1.      Defendants' *Motion in Limine No. 1* at Docket 444 is **GRANTED**.

2.      Defendants' *Motion in Limine No. 2* at Docket 445 is **GRANTED IN PART AND DENIED IN PART**.

3.      Defendants' *Motion in Limine No. 3* at Docket 446 is **DENIED**.

4.      Defendants' *Motion in Limine No. 4* at Docket 447 is **GRANTED**.

5.      Defendants' *Motion in Limine No. 5* at Docket 448 is **GRANTED**.

6.      Defendants' *Objection to Plaintiff's Designation of Preston Simmons and Rod Hochman as Trial Witnesses* at Docket 469 is **GRANTED**.

7.      The Court will bifurcate trial into a liability phase and a punitive damages phase.

IT IS SO ORDERED this 28th day of June, 2024, at Anchorage, Alaska.

_____*/s/ Joshua M. Kindred*_____
JOSHUA M. KINDRED
United States District Judge