IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

DEBRA RENA GRACIANI,

Plaintiff,

v.

PROVIDENCE HEALTH & SERVICES,
KELLI RINAS, and BRENDA FRANZ,

Defendants.

Case No. 3:18-cv-00087-MJP

ORDER ON POST-TRIAL MOTIONS
(DKT. NOS. 636, 646, 648)

## I.    INTRODUCTION

This matter comes before the Court on a trio of post-trial motions. The first is

Defendants Providence Health & Services, Kelli Rinas, and Brenda Franz's Motion for

Attorneys' Fees (Dkt. No. 636). The second is Plaintiff Debra Rena Graciani's Motion to

Review and Offset Taxed Costs (Dkt. No. 646). The third is Plaintiff's Motion to Seal

(Dkt. No. 648). Having reviewed the Motions, the Oppositions (Dkt. Nos. 642, 650), the

Replies (Dkt. Nos. 645, 651), and all supporting materials, the Court DENIES

Defendants' Motion for Fees, GRANTS IN PART Plaintiff's Motion for Costs, and

GRANTS IN PART Plaintiff's Motion to Seal.

## II.    BACKGROUND

Given the Parties' familiarity with the underlying dispute and lengthy record in

this case, the Court briefly reviews the relevant factual background.

1

Plaintiff Debra Rena Graciani alleged that her former employer, Defendant Providence Health & Services, violated civil rights laws when it discriminated against her on the basis of her race when it terminated her employment in the dialysis suite of the Alaska Medical Center, and retaliated against her after she complained about discrimination, harassment, and retaliation she claimed to have suffered while on the job. (See Court's Final Instructions to the Jury (Dkt. No. 627).) She also alleged that Providence and two of her former supervisors, Defendants Kelli Rinas and Brenda Franz, violated federal civil rights laws by preventing her from enjoying a benefit, privilege, term, or condition of a contract because of Plaintiff's race. (Id.)

While this case was being litigated, Plaintiff was investigated by the Alaska Board of Nursing ("BON") regarding accusations of misconduct related to "patient care/nursing decisionmaking, falsification of a patient record, hostile and disruptive behavior, and improper access and/or handling of confidential patient records." (BON Decision (Dkt. No. 424-1) at 6.) The BON held a hearing on the allegations during which Plaintiff was represented by counsel and was permitted to participate in her defense. (Id.) The BON hearing resulted in 19 days of testimony from 32 witnesses. (Id.) In a written order dated June 13, 2022, the presiding administrative law judge concluded that Plaintiff had "[f]alsified orders and medical records, [d]isregarded physician orders, [f]ailed to communicate with other professionals about the care of shared patients,[t]reated colleagues throughout the care setting with disdain and disrespect, and [f]lagrantly ignored her obligation to safeguard confidential patient health records," while "insist[ing]

2

on deflecting responsibility for every single violation and attempting to portray this licensing action as an employer's devious plot, rather than acknowledging her role in the many events that led to [the accusations]." (Id. at 67–68.) As a result, Plaintiff's nursing license was revoked. (Id. at 68.) Plaintiff then appealed the loss of her license to the Superior Court of Alaska, where, in a 46-page order, Superior Court Judge Laura Hartz affirmed the ALJ's findings and determination. (See generally Sup. Ct. Order (Dkt. No. 424-2).)

The majority of this case proceeded before Judge Joshua Kindred, who resigned his commission shortly before trial began due to substantiated allegations of misconduct and numerous violations of his duties as a judge. (See Dkt. No. 534 at 1–6.) Prior to his resignation, however, Judge Kindred issued three significant rulings which shaped the contours of the case. First, Judge Kindred granted in part Defendants' Motion for Summary Judgment which resulted in the dismissal of several of Plaintiff's claims, including all claims against named Defendants James Efird and James Blankenship. (See March 30, 2023, MSJ Order (Dkt. No. 379).) Second, Judge Kindred took judicial notice of the BON decision and Alaska Superior Court order and granted partial summary judgment in favor of Defendants on their after-acquired evidence defense. (See April 24, 2024, PMSJ Order (Dkt. No. 437).) The court concluded that "if Plaintiff succeeds on her claims [at trial], Providence does not have to offer reinstatement or provide front pay, and must only provide backpay from the date of the unlawful discharge to November 18, 2021, when Providence employees discovered Plaintiff's misconduct." (Id. at 19.) And

3

third, Judge Kindred applied the doctrine of <u>res judicata</u> to the factual findings made by the BON and the Superior Court, and prohibited Plaintiff from arguing or otherwise contesting the truth of those findings. (June 28, 2024, MIL Order (Dkt. No. 490).)

In the fallout of Kindred's resignation, the Ninth Circuit designated the undersigned to preside over the matter beginning July 31, 2024. (<u>See</u> Dkt. Nos. 505, 506.) This case began its ten-day trial nearly a year later, on May 12, 2025. During the trial, Defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which was granted in part as to certain elements of Plaintiff's retaliation claim and request for punitive damages, but otherwise denied based on the Court's conclusion that a reasonable juror could find in favor of Plaintiff. (Dkt. No. 630 at 80–81.) Shortly thereafter, the case was submitted to the jury, which, after approximately two hours of deliberation, returned a verdict for the Defendants. (<u>See</u> Minutes for Trial Day 10 (Dkt. No. 628); Jury Verdict (Dkt. No. 634).)

As the prevailing party, Defendants submitted their bill of costs seeking $91,265.32 in taxable costs from Plaintiff. (Dkt. No. 635.) Plaintiff submitted timely objections to those costs. (Dkt. No. 638.) The Clerk of the United States District Court for the District of Alaska reviewed the bill and objections and taxed a total of $40,312.18 in costs against Plaintiff. (Dkt. No. 643.)

Plaintiff moves the Court to review and offset those costs taxed against her. (Dkt. No. 646.) Separately, Defendants move the Court to award them $982,284.05 in attorneys' fees. (Dkt. No. 363.) The Court discusses both motions, below.

### III.     ANALYSIS

#### A.  Motion for Fees (Dkt. No. 636)

Defendants ask the Court to award them with nearly a million dollars in attorneys' fees on the basis that Plaintiff "knew (or should have known)" that her "race discrimination and retaliation were frivolous, unreasonable, entirely without merit, and could not be pursued unless in bad faith." (Mot. at 8–9.) In summary, Defendants claim that the BON decision and the findings of the Alaska Superior Court "rendered Plaintiff's claims entirely without merit and frivolous," and that her "unjustified continuation of meritless claims justifies fees against both Plaintiff as an individual and her counsel." (Id. at 26.) The Court disagrees.

The Court "may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n, 434 U.S. 412, 421 (1978). And "if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." Id. at 422. Courts in this district "also consider the plaintiff's financial resources when deciding whether to award attorney's fees to a prevailing defendant; any fee award 'should not subject the plaintiff to financial ruin.'" Navin v. Hartz, No. 4:20-CV-00007-TMB, 2023 WL 2989437, at *2 (D. Alaska Apr. 18, 2023) (quoting Christiansburg, 434 U.S. at 421–22).

5

Applying <u>Christiansburg</u>, the Ninth Circuit has held that "[a] case may be deemed frivolous only when the result is obvious or the . . . arguments of error are wholly without merit." <u>C.W. v. Capistrano Unified Sch. Dist.</u>, 784 F.3d 1237, 1245 (9th Cir. 2015) (quoting <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1195 (9th Cir. 2003)). For example, in <u>Love v. Kardooni</u>, plaintiff alleged that the defendant violated the ADA by failing to provide accessible parking spaces. No. 21-16685, 2022 WL 4376392 (9th Cir. Sept. 22, 2022). However, plaintiff admitted that defendants "provided no public parking, accessible or otherwise," which led the court to conclude that "forc[ing] Defendants to move for summary judgment on claims that he acknowledged were completely insufficient," was "frivolous, unreasonable, or without foundation," and thus warranted an award of attorneys' fees. <u>Id.</u> at *1. Similarly, in <u>Edgerly v. City & Cnty. of San Francisco</u>, the court affirmed an award of attorneys' fees to a defendant police officer after multiple depositions had clearly "established that [he] was not liable" for the underlying conduct to such an extent that "[n]o reasonable trier of fact could find that [he] had any personal involvement in the incident," nor find that the officer was "responsible for providing formal training to any [other] officers." 599 F.3d 946, 962 (9th Cir. 2010).

While the findings of the BON and Superior Court weighed heavily against Plaintiff's case, the Court does not find those findings sufficient to render Plaintiff's claims of discrimination frivolous, unreasonable, or without foundation. Unlike in the plaintiffs in <u>Love</u> or <u>Edgerly</u>, who unreasonably maintained their claims despite concrete factual

6

developments to the contrary, the findings here still left room for Plaintiff's allegations of discrimination. The BON and Superior Court findings do not directly address discrimination and therefore had no direct preclusive effect on Plaintiff's discrimination claims. Without such a direct contradiction, the Court declines to "engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Christiansburg, 434 U.S. at 421– 22.

Defendants' attempts to leverage the BON and Superior Court findings as dispositive to certain elements of Plaintiff's civil rights claims are unavailing. For example, Defendants claim that upon reviewing the BON decision, "no reasonable jury could find that Plaintiff was qualified for her position as a dialysis nurse." (Mot. at 23.) But while the BON found Plaintiff demonstrated "a callous disregard for patient well-being and a fundamentally dishonest character," it did not directly discuss her qualifications as a nurse and therefore carried no preclusive effect as to that element of Plaintiff's claim. Contrary to Defendant's position—summarized through the bombastic accusation that Plaintiff was "the Worst Nurse in the History of the State of Alaska," (see Mot. at 21)— Plaintiff adduced evidence during trial showing her employers' satisfaction with her work as a nurse, (see, e.g., Trial Ex. 3 (Plaintiff's positive performance evaluation)) as well as testimony from Dr. Gitomer and Dr. Maciejewski, both of whom spoke highly of Plaintiff's qualifications as a dialysis nurse. And prior to the BON hearing and

7

subsequent disposition, Plaintiff was nevertheless a licensed nurse—and therefore qualified for her position—when she was allegedly discriminated against by Defendants.

Accordingly, Defendants' Motion for Fees is DENIED.

## B. Motion to Offset Costs (Dkt. No. 646)

Plaintiff seeks the Court's review of the $40,312.18 of costs taxed against her on the basis that (1) certain fees are either not taxable or were excessive; and (2) she would be rendered indigent should she be forced to pay the taxed costs. (See generally, Mot.) The Court agrees in part.

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney[ ] fees—shall be allowed to the prevailing party." The rule "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." Ass'n of Mexican–American Educ. v. State of Cal., 231 F.3d 572, 591 (9th Cir. 2000) (en banc). Here, Defendants prevailed at trial and are thus presumptively entitled to their costs, which the Clerk of Court found to be taxable in the following amounts:

| | |
|---|---|
| **Service of Summons and Subpoena** | **$1,376.76** |
| **Printed or Electronically Recorded Transcripts** | **$23,133.67** |
| **Printing Costs** | **$15,217.51** |
| **Witness fees for 13 Witnesses ($40.00 per day)** | **$585.00** |
| **Total** | **$40,312.94** |

(Dkt. No. 643.) Plaintiff contests the costs taxed as to theses four major categories: Service of Summons and Subpoena; Printed or Electronically Recorded Transcripts; Printing Costs; and Witness Fees. Plaintiff further argues that her costs should be further

8

offset due to an outstanding ruling of the court regarding service on a former defendant. The Court addresses each of these arguments, in turn.

1. Service of Summons and Subpoena

Plaintiff argues that certain fees for service of summons and subpoena should be disallowed. (Mot. at 6.) Specifically, she takes issue with (1) two instances where Defendants incurred additional expense beyond the standard $65 per hour rate in order to serve Plaintiff's expert witness, Francis Gallela; and (2) two subpoenas issued during trial to BON representatives in order to procure an authenticated copy of the BON findings. (Id.) The Court disagrees with Plaintiff.

As to the expenses for Gallela, the Court agrees with Defendants that these additional expenses could have been avoided had Plaintiff produced her own expert witness for examination by the Defendant without a subpoena. Additionally, the additional expenses—$15.00 and $30.00 respectively—are de minimis and the Court finds them reasonable. And as to the expenses regarding the subpoenas issued to the BON representatives, the Court again agrees with Defendants that these expenses could have been avoided if Plaintiff had stipulated to the authenticity of BON decision document rather than require Defendants to subpoena the custodian of that decision on the eve of trial. Accordingly, the Court DENIES the Motion as it pertains to the Service of Summons and Subpoena Fees. The full $1,376.76 will remain taxed against the Plaintiff.

2. Transcripts

9

The costs for deposition and other hearing transcripts are taxable if they are reasonably necessary for trial. Evanow v. M/V Neptune, 163 F.3d 1108, 1118 (9th Cir. 1998). See also 28 U.S.C. § 1920(2) (taxable costs include "fees for printed or electronically recorded transcripts necessarily obtained for use in the case"); Alaska Local Civil Rule 54.1(e)(3) ("reasonable deposition costs, including transcript" are taxable). The Ninth Circuit affords the trial court broad discretion in determining whether a transcript is considered reasonably necessary. See E.E.O.C. v. Pape Lift, Inc., 115 F.3d 676, 683 (9th Cir. 1997) ("When considering whether particular costs are necessary, however, this court has often relied on the trial court's 'intimate familiarity' with the proceedings as a basis for making the determination.").

Defendants seek their costs for the deposition transcripts of (1) Dar'Shon Tucker; (2) Plaintiff; (3) Plaintiff's adult daughter (Allena Graciani); (4) Jennifer Hazen; (5) Joseph Peacott; (6) James Blankenship; (7) Francis Gallela, and (8) James Efird; and the hearing transcripts for (9) Plaintiff's termination hearing; and (10) the BON hearing. Defendant argues that the deposition transcripts were all reasonably necessary expenses as they related to witnesses who were either deposed by the Plaintiff (Tucker, Blankenship, and Efird); "directly relevant to Plaintiff's claims of emotional distress" (Allena Graciani); or otherwise "named as key witnesses in Plaintiff's case in chief." (Opp. at 17). Defendants also argue that the hearing transcripts "featured prominently in trial," and in Defendants' dispositive motions throughout the case. (Id. at 18)

The Court finds that in this case, the only transcripts which were "reasonably necessary" for Defendants' case were those used during the trial itself. Therefore, the Court will leave as taxed the $9,385.05 in costs associated with the deposition transcripts of Tucker ($135.00), Franz ($120.00), Efird ($65.00), Plaintiff ($4,150.70), Richards ($2,890.40), and Peacott ($2,022.95), all of which were used during the trial. However, the Court rejects the costs related to the deposition transcripts of Allena Graciani, Hazen, and Blankenship, as those depositions went unused during trial. Furthermore, the Court rejects the costs associated with the transcript of Plaintiff's termination hearing and the BON hearing. While the hearings and resulting orders of the BON and Alaska Superior Court may have "featured prominently in trial," the transcripts of those hearings were not. (See Dkt. No. 635-1 at 15 (reflecting the admission of the "2022.06.14 BON Decision" as Defendants' Exhibit No. 510); at 19 (reflecting the admission of the "Alaska Superior Court Order Affirming Revocation of Nursing License" as Defendants' Exhibit No. 589).) The Court further notes that despite Plaintiff's concerns regarding Defendants' use of Realtime trial transcripts, (Mot. at 8–9), those costs were not taxed by the Clerk, (see Dkt. No. 643).

Accordingly, the Motion is GRANTED IN PART as to the transcript fees. Plaintiff will be taxed in the amount of $9,385.05 for the transcript costs associated with the depositions of Tucker, Franz, Efird, Plaintiff, Richards, and Peacott.

3. Printing costs

The Parties generally dispute the $15,217.51 in the following taxed costs associated with Defendants' printing, copying, and collating certain documents in preparation for trial:

| | |
|---|---|
| Flash Drive | $90.00 |
| Copies/Blowback/Scanning ($0.10 per page) | $7,701.00 |
| Tabs | $5,110.57 |
| Binders | $2,061.80 |
| 3-hole punching | $79.95 |
| Paperclips | $15.30 |
| Covers | $42.00 |
| Tax | $41.26 |
| Courthouse Delivery | $40.00 |
| Mail Tracking | $35.63 |
| **Printing Costs Total** | **$15,217.51** |

(Dkt. No. 643 at 1–2.)

Per the taxation statute, fees associated with "exemplification and the costs of making copies" are taxable. 28 U.S.C. § 1920(4); <u>see also</u> Local Civil Rule 54.1(e)(6), (10). So, while the fees associated with "Copies/Blowback/Scanning ($0.10 per page)," "Tax," "Courthouse Delivery," and "Mail Tracking" are appropriately taxed, the Court declines to award the remaining fees as they are not included under the statute. Flash drives, binders, paper clips, tabs, 3-hole punching, and covers are all generic office supplies that the Court finds unnecessary to the cost of making copies available for use during trial. The Court considers these costs to be part of doing business in the field of law and thus an untaxable overhead expense.

12

Accordingly, the Motion is GRANTED IN PART as to the printing costs. Plaintiff will be taxed in the amount of $7,817.89 for the printing costs associated with copying, tax, delivery, and mail tracking.

4. Witness Fees

Plaintiff finally argues that she should not be taxed with witness fees for those witnesses who were not reasonably necessary for trial. (Mot. at 12 (citing United California Bank v. THC Financial Corp., 557 F.2d 1351, 1361 (9th Cir. 1977).) Specifically, she argues that Defendants should only receive $160.00 regarding the fees associated with the subpoenas of Hazen, Peacott, Allena Graciani, and Gallela, all of whom appeared for their deposition. (Id.) The Court agrees. The subpoenas to Plaintiff's former university (Columbus Technical College), former employers (Denali Dialysis, Dialysis Services of SE Alaska, AMN Healthcare), the Alaska Nurses Association, and Tudor Dialysis, Banner Health & Columbus Regional, were unnecessary as they did not play a role in trial or the disposition of any of Plaintiff's claims. Therefore, those costs are denied.

Accordingly, the Motion is GRANTED IN PART as to the witness fees. Plaintiff will be taxed in the amount of $160.00 for the fees associated with the subpoenas of Hazen, Peacott, Allena Graciani, and Gallela.

5. Service on Blankenship

Plaintiff further argues that her costs should be further offset to account for the expenses incurred in serving James Blankenship, then a named Defendant, back in 2018.

13

(Mot. at 13.) The Court previously found that Plaintiff was entitled to $1,179.90 in costs and fees, to "be included in the final judgment entered at the conclusion of this case, either as an additional payment due to Plaintiff from Defendant Blankenship or as a deduction from any judgment that may be entered in favor of Defendant Blankenship, whatever the resolution of the case may be." (Dkt. No. 41 at 2). The Court notes that the final judgment in this case did not include claims against Blankenship, as all claims against him were dismissed on summary judgment. (See Dkt. No. 379 at 50.) Despite Blankenship's dismissal from the case, the Court finds that the $1,179.90 offset should be applied against the costs entered in favor of the remaining (and prevailing) Defendants—who shared legal counsel with Blankenship—to secure the "just . . . determination" of the action. Fed. R. Civ. P. 1.

\*        \*        \*

As per the discussion above, the Motion is GRANTED IN PART. Upon review, the Court finds the following fees and costs to be taxable against Plaintiff:

| | |
|---|---|
| **Service of Summons and Subpoena** | **$1,376.76** |
| **Printed or Electronically Recorded Transcripts** | **$9,385.05** |
| **Printing Costs** | **$7,817.89** |
| **Witness fees for 4 Witnesses ($40.00 per day)** | **$160.00** |
| **Blankenship Service Award Offset (See Dkt. No. 41.)** | **-$1,179.90** |
| **Total** | **$17,559.80** |

The Court further finds that these costs are not so onerous as to "render [Plaintiff] indigent should she be forced to pay," and so declines to exercise its discretion to deny defendants their costs entirely. Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1248

14

(9th Cir. 2014) (affirming denial of fees to prevailing defendant, in part because the proposed costs would "exceed [plaintiff's] average annual earnings.").

The Court will subsequently enter an amended judgment reflecting the revised costs discussed herein. The Court further ORDERS that Plaintiff provide the costs to Defendants within 30 days of this Order. If she is unable to do so, the Parties are to meet and confer within 30 days and arrange a payment schedule.

### C. Motion to Seal (Dkt. No. 648)

Plaintiff seeks to seal in full her Motion to Review and Offset Costs (Dkt. No. 646) and her Declaration supporting the same (Dkt. No. 647), on the basis that they contain "private and sensitive financial information." (Mot. at 1.)

The party seeking to keep material filed under seal must meet either the "good cause" or "compelling interest" standard. See Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101 (9th Cir. 2016). "[T]he "good cause" standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions." Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006) (cleaned up). Here, the Court finds that the good cause standard applies, as the information which Plaintiff seeks to maintain under seal is related to the bill of costs, which is neither attached to a non-dispositive motion nor more than tangentially related to the merits of the case. See Chrysler Grp., 809 F.3d at 1101.

The Court find there to be good cause to seal the Declaration of Rena Graciani (Dkt. No. 647) because it contains discrete and particularized information pertaining to

Plaintiff's income, savings, investments, and expenses. There is little, if any, public interest in maintaining this information on the Court's public docket. And the Court is satisfied that sealing this information is necessary to protect Plaintiff from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Relatedly, the Court does not find there to be good cause to seal Plaintiff's Motion to Review and Offset Costs (Dkt. No. 646) because it does not contain the same discrete and particularized information regarding Plaintiff's finances. Rather, it summarizes that information in a manner which the Court finds to be appropriate to protect Plaintiff from the ills listed in Federal Rule 26(c)(1). (See Dkt. No. 646 at 3–4.)

Therefore, the Motion is GRANTED IN PART. The Clerk is instructed to seal the Declaration of Rena Graciani and attached exhibits found at Dkt. No. 647. However, Plaintiff's Motion to Review and Offset Costs (Dkt. No. 646) will remain unsealed as filed.

## IV. CONCLUSION

Defendants' Motion for Fees is DENIED. The Court declines to exercise its considerable discretion in awarding attorneys' fees to Defendants as Plaintiff's case was not frivolous, unreasonable, or without foundation. Although ultimately unsuccessful, Plaintiff's claims were not directly contradicted or otherwise disproved by the findings of the BON or Alaska Superior Court.

Plaintiff's Motion to Offset Costs is GRANTED IN PART. The taxable costs owed by Plaintiff to the prevailing Defendants are revised to $17,559.80, as detailed in this Order. The Clerk is instructed to file an amended judgment to reflect the taxation of these revised costs.

Plaintiff's Motion to Seal is GRANTED IN PART. The Court finds good cause that the information contained in the Declaration of Rena Graciani and the attached exhibits. The Clerk is instructed to seal the main and supporting documents found at Dkt. No. 647. Plaintiff's Motion to Review and Offset Costs (Dkt. No. 646) will remain unsealed as filed.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 15, 2025.

Marsha J. Pechman
United States Senior District Judge

17